**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Johnny Lee WALLACE,
Defendant–Appellant.**

No. 89–1318
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 22, 1989.

Rehearing Denied Dec. 27, 1989.

---

Greg Glass, Houston, Tex. (court appointed), for defendant-appellant.

LeRoy Morgan John, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., Dan H. Mills, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

Convicted of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), Johnny Lee Wallace appeals, challenging the

seizure of the firearm, the constitutionality of the statute under which he was convicted, and his enhanced sentence. Finding no error, we affirm.

## Background

Late one December evening two Brenham, Texas police officers responded to a reported disturbance at the Stone Hollow Apartments. Upon arriving at the apartment complex the officers heard loud voices emanating from the apartment to which they had been dispatched. The officers knocked and the door was opened by a woman who was red-faced and crying. She stepped outside. Wallace stepped into the doorway, placing his hands on the sides of the door frame.

The officers advised the couple of the complaint the police had received and asked if everything was okay. Wallace responded affirmatively; the woman quickly said "no" and informed the officers that Wallace had a gun and was threatening to kill himself. As the woman spoke, Wallace stepped back into the apartment and lowered his hands.

The mention of a gun galvanized the officers into action. They restrained Wallace's hands, found and removed a gun tucked in the back of his belt, and handcuffed and arrested him for disorderly conduct. Wallace and the gun were taken to police headquarters.

In due course Wallace was indicted for a violation of 18 U.S.C. § 922(g)(1), possession of a firearm in or affecting commerce by a person previously convicted of a felony, a crime then punishable by imprisonment for five years. The government gave notice of its intent to seek an enhanced sentence under 18 U.S.C. § 924(e)(1) which mandates a minimum sentence of 15 years imprisonment for persons with three prior convictions for violent felonies.

Wallace moved to suppress all statements and physical evidence obtained as a result of his arrest and the seizure of the gun. The trial court agreed with Wallace that his warrantless arrest was illegal under Texas law, but it held that the gun had been seized constitutionally and should not be suppressed. Wallace was tried and the jury returned a verdict of guilty. After a sentencing hearing the court found the enhancement provisions of section 924(e)(1) applicable and imposed the mandatory 15–year sentence. Wallace timely appealed.

## Analysis

### 1. Seizure of the gun

Appellate review of a ruling on a motion to suppress follows the familiar path of plenary review of legal conclusions but a rejection of only those factual findings found to be clearly erroneous. *United States v. Tarango–Hinojos*, 791 F.2d 1174 (5th Cir.1986); *United States v. Breckenridge*, 782 F.2d 1317 (5th Cir.), *cert. denied*, 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986). Applying that standard we find no error in the court's refusal to suppress the gun and information flowing therefrom.

 Wallace lists three actions by the officers which he contends violated his fourth amendment rights: the initial knock on his apartment door; the removal of the pistol from his belt; and the taking of the pistol to police headquarters. We need not pause long on the first two. The knock on the door lacks the element of coercion or duress necessary to trigger fourth amendment concerns. *Cuevas–Ortega v. INS*, 588 F.2d 1274 (9th Cir.1979); *see also*, *United States v. Berry*, 670 F.2d 583 (5th Cir.1982) (en banc). The removal of the gun from Wallace's belt was nothing more than a "stop and frisk" within the teachings of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). After learning from the obviously distressed companion that Wallace had a gun and was threatening suicide, "[i]t would have been poor police work indeed" for the police to have left the scene. *Terry*, 392 U.S. at 23, 88 S.Ct. at 1881. To the contrary, the police had reasonable grounds to believe that Wallace was armed and potentially dangerous to all present and they were entitled, if not obliged, to search his outer clothing for weapons. "Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from

whom they were taken." 392 U.S. at 31, 88 S.Ct. at 1885.

■ Having legally come into possession of the gun the police were entitled, if not expected, to note and to record its serial number and its Miami, Florida stamp, evidence which was relevant to the "in or affecting commerce" element of the offense. *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). That this was not done until the officers returned to the station house with Wallace and the gun is of no moment. Wallace's arrest was held unlawful. However, "[i]n the language of the 'time worn metaphor' of the poisonous tree, the toxin in this case was injected only after the evidentiary bud had blossomed; the fruit served at trial was not poisoned." *United States v. Crews*, 445 U.S. 463, 472, 100 S.Ct. 1244, 1250, 63 L.Ed.2d 537 (1980) (citations omitted). *See also Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (exclusionary rule does not apply where government learned of evidence from an independent source); W. LaFave, 3 *Search and Seizure*, § 11.4 at 617 (1978) (exclusionary rule does not apply where illegal conduct was not "but for" cause of government acquisition of challenged evidence). The trial court properly declined to suppress the gun and the information flowing therefrom.

2. *Constitutionality of 18 U.S.C. § 922(g)*

■ Wallace maintains that 18 U.S.C. § 922(g) is unconstitutional because it requires possession of a gun "in or affecting commerce" but neither section 922 nor the preceding definitional section of the statute, section 921, limits commerce to "interstate commerce." This argument is without merit.

In 1986 Congress gathered into section 922(g) the offenses of shipping, transporting, possession and receipt of firearms by certain classes of "unqualified" persons that previously were divided between 18 U.S.C. § 922(g) and 18 U.S.C.App. § 1202(a). Firearms Owners' Protection Act, P.L. No. 99–308, § 102(6)(D), 100 Stat.

449, 452 (1986); H.Rep. No. 495, 99th Cong., 2d Sess. 23 (1986), *reprinted in* 1986 U.S.Code Cong. & Ad. News 1327, 1349. In so doing Congress incorporated the "in or affecting commerce" language used in section 1202(a) to modify possession but failed to incorporate the definition of commerce as interstate commerce contained in section 1202(c)(1). Section 1202 was repealed in its entirety. P.L. No. 99–308, § 104(b), 100 Stat. 459. Wallace seizes on what is at most an oversight to insist that section 922(g) is beyond the power of Congress, as well as unconstitutionally overbroad and vague. His argument is inconsistent with the text of the statute, its legislative history and interpretive jurisprudence.

Section 922(g) as amended makes it unlawful for certain persons

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g). The accompanying House Report eliminates any possible ambiguity. It instructs that the new section 922(g) prohibits unqualified persons "from receiving, possessing or transporting firearms in interstate or foreign commerce or firearms which have been shipped or transported in interstate or foreign commerce...." 1986 U.S.Code Cong. & Ad. News 1349. We agree with our colleagues in the First Circuit who, in interpreting section 922(g) as amended, stated that "the words 'affecting commerce' are jurisdictional words of art, typically signalling a congressional intent to exercise its Commerce Clause power broadly, perhaps as far as the Constitution permits." *United States v. Gillies*, 851 F.2d 492, 493 (1st Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988). We therefore hold that section 922(g) reaches only those firearms that traveled in interstate or foreign commerce and is thus constitutional.

3. *Origin of the firearm*

■ Wallace contends that the government's evidence as to the out-of-state origin

of his gun was inadmissible hearsay and, if admissible, insufficient to support the jury's verdict. The government presented the testimony of an agent of the Alcohol, Tobacco and Firearms Bureau (ATF), who testified that the markings on the gun established that it was made by a company which does not manufacture or assemble guns in Texas. The agent's testimony was based on 13½ years of experience in the identification of the place of origin of firearms. The agent's testimony was admissible and we deem it sufficient to establish the requisite interstate nexus.

In *United States v. Harper*, 802 F.2d 115 (5th Cir.1986), we held that testimony by an ATF agent as to a weapon's origin, based on markings on the gun, trade publications, and company catalogues, was admissible under Fed.R.Evid. 703. Seeking to avoid the import of *Harper*, Wallace argues that the ATF agent's testimony at bar was not expert because it did not involve scientific, technical or other specialized knowledge within the scope of Fed.R.Evid. 702. We disagree. The agent testified that his conclusions were based on his lengthy research, training, and experience as an ATF agent. His testimony qualified under Rules 702 and 703.

■ As to his conviction Wallace finally argues that he was denied a fair trial because the trial court admonished his attorney not to make unnecessary objections during the government's closing argument. The argument is devoid of merit. *United States v. Davis*, 752 F.2d 963 (5th Cir.1985).

### 4. *Sentence enhancement*

Wallace's final challenge is to the application of section 924(e)(1) to enhance his sentence. He bases his challenge on three grounds; none is sufficient.

■ Wallace first claims a violation of the double jeopardy clause of the fifth amendment because one of his three prior felony convictions was "used" twice—once to bring him within the scope of the substantive offense, the possession of a firearm by a felon, and again to bring him within the scope of the sentence enhancement provision, which requires three previ-

ous convictions for violent felonies. The double jeopardy clause protects against multiple prosecutions and punishments for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). Wallace was neither prosecuted nor punished twice for the same offense. Section 922(g) defines a substantive offense; section 924(e)(1) is a penalty provision. *United States v. Affleck*, 861 F.2d 97 (5th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989). Consideration of the same felony to convict under section 922(g) and to enhance punishment under section 924(e)(1) is neither a double prosecution nor a double punishment. Relying on a prior felony for sentence enhancement of a later conviction is not punishment for the prior offense; rather, "the repetition of criminal conduct aggravates [the defendant's] ... guilt and justifies heavier penalties when he is again convicted." *United States v. Bowdach*, 561 F.2d 1160, 1175 (5th Cir.1977). The double jeopardy clause is not implicated.

■ Wallace next contends that he does not have three previous convictions within the meaning of section 924(e)(1) because two of his prior convictions arose from the same judicial proceeding and resulted in concurrent sentences. Those convictions, however, involved three separate criminal acts. Today's disposition is controlled by *United States v. Herbert*, 860 F.2d 620 (5th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989), in which we held that multiple convictions arising from separate criminal transactions should be treated as separate convictions, regardless of the number of judicial proceedings involved. Wallace would have us ignore or overrule *Herbert*. We are neither free nor disposed to do either.

■ Finally, Wallace argues that his conviction for burglary of a building was not for a violent felony within the meaning of section 924(e)(1). Although section 924(e)(2)(B)(ii) explicitly defines burglary as a violent felony, Wallace maintains that burglary of a building poses less risk of harm to persons than the common law

crime of burglary—breaking and entering a dwelling at night with intent to commit a felony. Wallace's argument is foreclosed by *United States v. Leonard*, 868 F.2d 1393 (5th Cir.1989), *petition for cert. filed*, 58 U.S.L.W. 3035 (U.S. May 18, 1989) (No. 88–1885), in which we declined to examine the elements of the state law offense or the conduct of the defendant to determine whether a state offense cognomened "burglary" was a violent felony. Instead, we held that "a conviction for a crime which the state denominates 'burglary' is a conviction for burglary within the meaning of section 924(e)(2)(B)(ii)." 868 F.2d at 1399. Like Wallace, one of Leonard's three prior convictions was for burglary of a building. Wallace's conviction for burglary of a building constitutes a conviction for a violent felony for purposes of sentence enhancement under section 924(e)(1).

The conviction and sentence are AFFIRMED.