**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Leonard Wesley SHELTON, Defendant–Appellant.**

No. 90–8535.

United States Court of Appeals, Fifth Circuit.

July 19, 1991.

Henry J. Bemporad, Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Joan E. T. Stearns, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before JONES and DUHÉ, Circuit Judges, and WALTER[1], District Judge.

PER CURIAM:

A federal grand jury indicted Leonard Wesley Shelton, a thrice-convicted felon, on two counts of federal firearm violations: (1) knowingly making a false and material written statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6); and (2) knowingly receiving a firearm that "had moved in commerce, and affecting commerce," in violation of 18 U.S.C. § 922(g)(1). Shelton pleaded not guilty and waived his right to a jury trial. At the bench trial, Shelton moved to dismiss the second count on the ground that the indictment failed to allege that the firearm had been shipped or transported to interstate or foreign commerce, which is an element of the offense. The district court denied the motion, found Shelton guilty on both counts, and sentenced him to thirty months in prison and three years of supervised release for count one and 180 months in prison and three years of supervised release for count two. The terms were to be served concurrently.

Shelton appeals the denial of his motion to dismiss count two. Count two of the indictment reads as follows (emphasis added):

> That on or about December 23, 1988, in the Western District of Texas, Defendant, LEONARD WESLEY SHELTON, being a person who had been convicted of felonies on three previous occasions, ... *did knowingly and unlawfully receive a firearm*, to wit: an F.I.E. Derringer, Model D.38, .38 caliber pistol, serial number F01917, *which firearm had moved in commerce, and affecting commerce*, in violation of Title 18, United States Code, Section 922(g)(1) and 924(e)(1).

The statute upon which count two is based reads as follows:

> (g) It shall be unlawful for any person—
>
> (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;
>
> .    .    .    .    .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition

---

[1]. District Judge of the Western District of Louisiana, sitting by designation.

which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Given the language of the statute, Shelton argues that count two of the indictment should have been dismissed because it failed to allege that the firearm that he was charged with receiving had been shipped or transported in interstate or foreign commerce. By alleging that Shelton received a firearm that had "moved in or affecting commerce," the indictment conflated the elements of two distinct crimes, receipt and possession, thereby failing to state an offense at all. Shelton's argument depends on the distinction he urges between the phrase "in and affecting" commerce and the phrase "shipped or transported" in interstate or foreign commerce.[2] He asserts that Congress intended these two phrases to apply to different categories of interstate commerce. His argument is that "shipped or transported" is narrower than "in or affecting," and thus illegal receipt encompasses a narrower range of activities than illegal possession does. As a result, Shelton argues, by mixing the elements of the two crimes, the indictment fails to state an offense, contravening the Fifth Amendment's guarantee that a defendant be prosecuted for an "infamous" or serious crime only by grand jury indictment.[3]

■ Whether an indictment sufficiently alleges the elements of an offense is a question of law to be reviewed de novo. *United States v. Contris*, 592 F.2d 893, 896 (5th Cir.1979). "An indictment must allege every element of the crime charged." *United States v. Merritt*, 882 F.2d 916, 918 (5th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990). "An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant what charge he must be prepared to meet, and enables the accused to plead acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Gordon*, 780 F.2d 1165, 1169 (5th Cir.1986). An indictment is "read for [its] clear meaning and convictions will not be reversed for minor deficiencies that do not prejudice the accused." *Merritt*, 882 F.2d at 918 (quoting *Contris*, 592 F.2d at 896).

■ The issue in this case is whether Shelton's arguments are precluded by a recent unpublished opinion of this court. In *United States v. Perez*, No. 90–8177 (5th Cir. Sept. 27, 1990), 917 F.2d 560 (table) (unpublished), the indictment contained precisely the same wording as Shelton challenges in this appeal. There the indictment alleged that Perez, a convicted felon, did "knowingly and unlawfully receive" a firearm "which had moved in commerce, and affecting commerce," in violation of 18 U.S.C. § 922(g)(1). *Perez*, slip op. at 5. Perez made all the same arguments: that the indictment failed to allege that the firearm had "been shipped or transported in interstate commerce," and that the phrase "in and affecting commerce" has a broader meaning than the phrase "in interstate or foreign commerce."

In *Perez* we held that "an indictment alleging receipt of a firearm 'which had moved in commerce, and affecting commerce,' as in this case, is sufficient to charge the offense of receipt of a firearm 'which has been shipped or transported in interstate or foreign commerce.'" *Id.* at 7. In so holding, we noted that "commerce" in the phrase "in or affecting commerce" in section 922 refers to interstate commerce, and "the House report ... makes clear that § 922 prohibits certain people 'from receiving, possessing or transporting firearms in interstate or foreign commerce or firearms which have been shipped or transported in interstate or foreign commerce.'" *Id.* at 7

---

**2.** The placement of the quotation marks is critical. Although his briefs waffle on this point, Shelton ultimately does not argue that illegal receipt involves only interstate and foreign commerce whereas illegal possession also implicates purely *intra*state commerce. As he admits, that argument is foreclosed by *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir.1989) ("[S]ection 922(g) reaches only those firearms that traveled in interstate or foreign commerce and is thus constitutional."), *cert. denied*, — U.S. —, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990).

**3.** Shelton contends that the government must show that the grand jury understood what the indictment charged.

n. 1 (quoting *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir.1989) (quoting H.R. Rep. No. 495, 99th Cong., 2d Sess. 23, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1327, 1349), *cert. denied*, —— U.S. ——, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990). *Wallace* explained that to avert any possibly unconstitutional application of the "in or affecting commerce" language to purely intrastate commerce, "section 922(g) reaches only those firearms that traveled in interstate or foreign commerce." 889 F.2d at 583.

Even if we were not bound by *Perez*, Shelton's position makes sense only if one can really believe that Congress intended to differentiate the crimes of illegal possession and receipt or shipment in terms of different levels of involvement of interstate commerce. For all the reasons stated in *Perez*, we find that construction so unlikely as to border on the absurd. When it enacted § 922(g) in 1986, Congress plainly intended to condense in one place what had been two statutes proscribing "unqualified" persons from shipping, transporting, receiving or possessing firearms. *Wallace*, 889 F.2d at 583. Both of the previous statutes described very broadly the nexus between such conduct and had previously been broadly construed. *See, e.g., Scarborough v. United States*, 431 U.S. 563, 567–69, 97 S.Ct. 1963, 1965–66, 52 L.Ed.2d 582 (1977) (possession of firearm previously shipped in interstate commerce is, in fact, possession "in commerce or affecting commerce.") There is no reason to suppose, and the legislative history cited above denies, any congressional intent to retreat from a broad commerce clause interpretation of these statutes. Finally, the grammatical difference between "possession in or affecting commerce" and "receipt in interstate or foreign commerce" does not, in this statute, distinguish between *types* of commerce. Rather, the language in each phrase most accurately describes *how* commerce would be connected with the particular illegal conduct. We reject Shelton's proffered construction of § 922(g).

We also held in *Perez* that the indictment provided the defendant with enough facts to inform him of the charge that he would have to defend against. Slip op. at 7–8. We noted first that the indictment directed Perez to 18 U.S.C. § 922, the statute he was charged with violating. We explained that "[t]his statutory citation served to 'reinforce the other references within the indictment,' *United States v. Campos–Asencio*, 822 F.2d 506, 508 (5th Cir.1987), and thereby increase its clarity. *United States v. Boyd*, 885 F.2d 246, 249 (5th Cir.1989)." Slip op. at 8. *Accord United States v. Rivera*, 879 F.2d 1247, 1252 (5th Cir.) (per curiam), *cert. denied*, —— U.S. ——, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989). The indictment in this case similarly referred Shelton to 18 U.S.C. § 922(g)(1), the statute he was charged with violating. Also, in rejecting the lack-of-notice argument in *Perez*, we relied on the fact that "the indictment further provided Perez with a detailed description of the firearm he was charged with receiving." Slip op. at 8. Here, as well, Shelton's indictment lists the specific firearms he is charged with receiving.

Shelton argues that *Perez* is not controlling because it was decided under a different standard of review and because it did not resolve the question whether the phrase "in or affecting" reaches conduct not reached by the phrase "shipped or transported." Shelton is correct that, under the standard of review in *Perez*, the indictment was entitled to more deference than the indictment in this case is. Perez was objecting to the sufficiency of the indictment for the first time on appeal; in such cases we read the indictment liberally. *United States v. Hernandez*, 891 F.2d 521, 525 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1935, 109 L.Ed.2d 298 (1990). Under this deferential standard, the indictment is sufficient "unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted." *United States v. Wilson*, 884 F.2d 174, 179 (5th Cir.1989) (quoting *United States v. Trollinger*, 415 F.2d 527, 528 (5th Cir.1969) (per curiam)). This deferential standard is not applicable in the present case, because

Shelton raised his objection to the indictment at trial.

However, while we acknowledged in *Perez*—before the discussion of the merits and in the conclusion—that we were required to read the indictment liberally, our holding did not depend on the standard of review. We are aware of the increased scrutiny required in this case. Nevertheless, we are persuaded that the arguments that supported our holding in *Perez* apply equally strongly here and, therefore, that our holding in that case is controlling.

AFFIRMED.