**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 93-1045
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

MILLARD F. McAFEE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
(November 30, 1993)

Before GOLDBERG, JONES and DUHÉ, Circuit Judges.[1]

DUHÉ, Circuit Judge:

Appellant, Millard F. McAfee, was convicted of one count of
wilful perjury under 18 U.S.C. § 1621 and three counts of making
irreconcilable contradictory declarations in a proceeding before or
ancillary to a court or grand jury under 18 U.S.C. § 1623(c).
McAfee appeals raising a number of issues that he argues justify
conviction reversal, dismissal of three counts, or resentencing.
We decline to grant relief on any of the grounds argued and affirm
McAfee's conviction and sentence.

BACKGROUND

McAfee owned a cattle hide processing company called Amarillo
By-Products. In 1986 and 1987, two companies that sold cattle

---

[1]Judge Jones did not sit for oral argument due to illness, but did
participate in the opinion with the aid of the tape recordings.

hides to Amarillo By-Products separately sued Amarillo By-Products and McAfee alleging that they stole higher quality hides and substituted lower quality ones. These lawsuits were consolidated, and in connection with them, the Plaintiffs' attorney, John Lovell, deposed McAfee on June 30, 1987. On December 3-4, 1990, McAfee was deposed again in connection with a lawsuit filed against an individual alleged to be involved in the stolen hides scheme. After settlement of the litigation, Lovell reported McAfee's alleged incidents of perjury to the U.S. Attorney's office and the FBI.

## DISCUSSION

### I. Applicability of § 1623 to Civil Depositions

An indictment under 18 U.S.C. § 1623(c) applies to statements made in "any proceedings before or ancillary to any court or grand jury of the United States." McAfee argues that § 1623(c) does not apply to depositions taken pursuant to Federal Rule of Civil Procedure 30 because such depositions are less formal than ones taken in criminal proceedings.

In Dunn v. United States, 442 U.S. 100 (1979), the Supreme Court reviewed the definition of "proceedings before or ancillary to any court" in the context of an affidavit given in an attorney's office. The Court concluded that § 1623(c) should not "encompass statements made in contexts less formal than a deposition." Id. at 113 (emphasis added). Although the case arose out of a criminal proceeding, the Supreme Court did not differentiate between federal civil and federal criminal proceedings. There is no real

2

substantive difference between federal civil and criminal depositions. Although a court order must be obtained to take a criminal deposition, Federal Rule of Criminal Procedure 15 states that subject to additional conditions provided by the court or the rules, a "deposition shall be taken and filed in the manner provided in civil actions." Thus, we hold that § 1623(c) does apply to civil depositions.

II. <u>Sufficiency of the Indictment</u>

Based on inconsistencies between McAfee's 1987 and 1990 deposition testimonies, he was indicted on three counts of perjury under 18 U.S.C. § 1623(c). Relying on <u>Bronston v. United States</u>, 409 U.S. 352 (1973), McAfee challenges the legal sufficiency of the indictments on Counts 2, 3, and 4 on the grounds that his answers to the questions asked were literally true. We review the sufficiency of an indictment de novo. <u>United States v. Shelton</u>, 937 F.2d 140, 142 (5th Cir.), <u>cert. denied</u>, 112 S. Ct. 607 (1991). An indictment is sufficient if it contains the elements of the offense charged, fairly apprises the defendant what charge he must be prepared to meet, and enables him to plead an acquittal or a conviction in future prosecutions for the same offense. <u>Russell v. United States</u>, 369 U.S. 749, 763-64 (1962); <u>Shelton</u>, 937 F.2d at 142.

The issue for the Supreme Court in <u>Bronston</u> was whether an evasive or unresponsive answer that was literally true, but might have misled the questioner, was legally sufficient to support a conviction for perjury under 18 U.S.C. § 1621. <u>Bronston</u>, 409 U.S.

3

at 356. It was undisputed that the defendant's answer was literally true. The Court held that such an answer was not sufficient to support a conviction under § 1621. Id. at 357.

In contrast to § 1621, the Government need not prove the falsity of McAfee's declarations under § 1623(c); rather, the Government must prove that "the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false." 18 U.S.C. § 1623(c). The holding in Bronston has no application in determining the sufficiency of an indictment under § 1623(c) because an offense charged under that statute involves different elements than one charged under § 1621. Accordingly, we conclude that the indictments on Counts 2, 3, and 4 are sufficient as they meet all the criteria set forth by the Russell Court.

III. Sufficiency of the Evidence

Convictions must be affirmed if the evidence, viewed in the light most favorable to the verdict, with all reasonable inferences and credibility choices made in support of it, is such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Kim, 884 F.2d 189, 192 (5th Cir. 1989). In making this determination, we need not exclude every reasonable hypothesis of innocence. United States v. Henry, 849 F.2d 1534, 1536 (5th Cir. 1988). Juries are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving

4

effect to the inferences that may reasonably be drawn from the evidence. United States v. Cruz-Valdez, 773 F.2d 1541, 1546-47 (11th Cir. 1985) (en banc), cert. denied, 475 U.S. 1049 (1986).

Section 1623(c) sets forth its own method for proving false declarations. The statute allows contradictory statements without more to form the basis of perjury prosecution and permits the jury to infer the falsity of a declaration from its inconsistency with another. The Government must show that the statements are so irreconcilable that one of the statements is "necessarily false." See 18 U.S.C. § 1623(c). We find the Fourth Circuit's explanation of § 1623(c) instructive and adopt the standard set forth in United States v. Flowers, 813 F.2d 1320 (4th Cir. 1987). In Flowers, the court concluded that section 1623(c) "requires a variance in testimony that extends beyond mere vagueness, uncertainty, or equivocality. Even though two declarations may differ from one another, the § 1623(c) standard is not met unless, taking them into context, they are so different that if one is true there is no way the other can also be true." Id. at 1324; see also United States v. Porter, 994 F.2d 470 (8th Cir. 1993). Given this standard under § 1623(c), we conclude that a rational trier of fact could find McAfee guilty on each count.

A. Count 2

Count 2 involves McAfee's testimony regarding an entity called "Southwest Exchange."[2] Taking the testimony in context, a rational

---

[2] During the 1987 deposition, McAfee testified as follows:
Q. Do you know the names of any persons who have sold any hides to the hide plant for cash?

A. Um, Chester Peterson, he always wants cash; and there's a guy out of El Paso that we call "Southwest Exchange", and he always wants cash. He's a Mexican man; I don't know anything else about him.

Q. What is the name of this guy from El Paso?

A. I don't know.

During the 1990 deposition, testified that "Southwest Exchange" was Warren Pugh. He testified as follows:

Q. Looking at check number 13162, where did the money go to Southwest Exchange, the $1,770?

A. That would have went to Warren Pugh.

. . .

Q. Let's look at this next Southwest Exchange check, it's got an exhibit sticker Deposition Exhibit 26 to your deposition, previous deposition, dated June 26, 1985, made out to Southwest Exchange for $750. Who would have got that check?

A. Warren Pugh.

. . .

Q. And Southwest Exchange was Warren Pugh, so when you wrote it to --

A. That's right.

Q. -- Southwest Exchange you knew it was Warren Pugh?

A. Knew it was Warren Pugh.

Q. Why didn't you tell us that when we asked you who Southwest Exchange was in the Amarillo case?

A. I don't remember.

Q. Did you just not want us to know that Warren was involved?

A. I just -- yeah, you know, I wasn't -- I'm not cooperative today, you know, I get ornery in a minute. He gave me a lesson here at noon to be nice.

. . .

Q. And you knew who Southwest Exchange was?

A. Yes, sir.

Q. We've been through this before once but do you recall me taking your deposition June 30th and July 1st, 1987?

A. Yes, sir, I guess so.

. . .

Q. Now, why is it that in June and July of 1987 you testified under oath that Southwest Exchange was a Mexican guy out of El Paso but today you're telling us it's Warren Pugh and has always been?

A. That's right.

Q. Well, which is the truth?

A. It's Warren Pugh. I didn't want to tell you.

Q. So you just lied to me?

A. That's right. I'm not going to help you.

. . .

Q. Well, Mac, if you're going to lie to us when it suits you

6

trier of fact could have found that the testimonies were so different that if one statement was true, the other must be false. The jury could infer that McAfee was not confused about the "Southwest Exchange" referred to during the 1990 deposition, especially when McAfee was confronted with the inconsistencies of his 1987 statement. Further, McAfee's testimony does not manifest vagueness, uncertainty, or evasiveness. His admission in 1990 that he lied in 1987 makes such a contention disingenuous. Cf. Flowers, 813 F.2d at 1325 (concluding that defendant's manifestations of uncertainty and forgetfulness corroborates claims of memory lapse).

B. Count 3

Count 3 involved testimony regarding McAfee's storage of personal bull hides.[3] McAfee argues that terms used in the

---

or when you don't like the question, how are we going to know when to believe what you say?
A. You don't.

[3] During the 1987 deposition, McAfee testified as follows:
Q. Have you ever stored, at the Amarillo By-Products facility, any hides that you have purchased for your own account?
A. No, I haven't.
Q. Have you ever stored anywhere in your warehouse facility, hides that you purchased for your own account?
A. No.

During the 1990 deposition, the following exchange took place:
Q. Yes. When I asked you if you stored any of your hides at Amarillo By-Products' hide house, you told me you hadn't. Now, were you being evasive then?
A. Yes, sir.
Q. So what you told me then wasn't correct but what you're telling me now is correct that you did, in fact, have your own personal bull hides in there?
A. Little dabs of them, yes, sir.
Q. Why are you telling me this -- the truth now when you didn't before.

questions were different and because there was no time frame mentioned in 1990, his position could have changed as to the storing of hides. The questioning in 1990, however, involved a recounting of the testimony McAfee gave in 1987. Further on December 3, 1990, the first day of the deposition testimony, McAfee had been confronted with the inconsistencies in his 1987 testimony. A jury could reasonably find that McAfee was not confused as to the time frame or the meaning of the terms used during the questioning on December 4.

Alternatively, McAfee argues that he recanted his 1987 testimony the first day of the 1990 deposition. A recantation of false testimony will be a bar to prosecution if it is made "in the same continuous court or grand jury proceeding in which a declaration is made." 18 U.S.C. § 1623(d). We conclude that the district court did not err in adopting the magistrate judge's finding that the 1990 deposition was not part of the same proceeding in which the false statement was made. Accordingly, any "recantation" made by McAfee in 1990 is not a bar to prosecution.

C. <u>Count 4</u>

Count 4 involves testimony regarding the identity of a "Chester Peterson."[4] Again, McAfee argues that the same questions

---

A. On the Chester Peterson deal, I was trying to protect Garth and his father.
Q. Okay. What about your bull hides?
A. I didn't think that was any of your business.

[4] The testimony in 1987 by McAfee was:
Q. I would like to first ask you if you know a person by the name of Chester Petersen [sic].
A. No, I've never met him.

8

were not asked each time.  The jury, however, could reasonably find from the testimony as a whole that McAfee knew in 1990 that the Chester Peterson being asked about was the same Chester Peterson he

---

```
Q.  Have you ever heard of him?
A.  Yes.
        . . .
Q.  Where have you heard of Chester Petersen [sic]?
A.  Oh, he's a guy that brings some hides in occasionally.
     He's not very regular.
Q.  Do you know where he has his business or where he is from?
A.  Huh-uh.  No, I don't.
        . . .
Q.  Do you know the name of any company he is affiliated with?
A.  No.
Q.  He doesn't have a business name or a corporation he is
involved with, or --
A.  Not that I know --
Q.  -- an associate?
A.  Individual.
```

In 1990 the testimony was:
```
Q.  Who's Chester Peterson?
A.  Chester Peterson, was -- he was a guy that worked for
Garth, some kind of mechanic, carpenter or something.
Q.  And how do you come to find that out?
A.  I'm really not sure who he was.  I never met him.  Garth
     had us make checks to him periodically.
        . . .
Q.  Going back to July 30th, 1987 deposition, I asked you
     about Chester Peterson . . .
        . . .
Q.  Well, that's not really correct, is it, if Chester
     Peterson was Garth or somebody working for Garth, you
     knew where his business was, didn't you?
A.  Chester Peterson was a name that Garth gave us to pay for
     those calf skins, I don't even remember this here.
Q.  Why didn't -- in 1987, why didn't you tell me that when
     you were asked?
A.  I didn't want to answer it.
Q.  Question on line 13 on page 5:  Do you know the name of
     any company he is affiliated with?
A.  No.
Q.  Well, today you just told us Chester Peterson is
     affiliated with Hereford Bi-Products.
A.  What I'm telling you today is the truth.
Q.  So what you told me then wasn't?
A.  Those were evasive answers.
```

9

testified about in 1987. McAfee even testified at trial that he did not say who Chester Peterson was in 1987. Further, his testimony cannot be characterized as evasive, vague, or uncertain because many of his answers were "yes" and "no." See, e.g., United States v. Cuesta, 597 F.2d 903, 920 (5th Cir.), cert. denied, 444 U.S. 964 (1979).

IV. Failure to Give Recantation Instruction

On Count 1, McAfee was charged under 18 U.S.C. § 1621 for falsely testifying in his 1987 deposition that he split proceeds from checks with another. McAfee contends that the district court abused its discretion in failing to give a jury charge regarding recantation of his false 1987 testimony.

The trial court has broad discretion to formulate jury instructions, "as long as they are fundamentally accurate and not misleading." Gates v. Shell Offshore, Inc., 881 F.2d 215, 218 (5th Cir. 1989), cert. denied, 494 U.S. 1017 (1990). A trial judge's refusal to deliver a requested instruction is reversible error if: (1) the instruction is substantially correct; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to present a given defense effectively. United States v. Hudson, 982 F.2d 160, 162 (5th Cir.), cert. denied, 62 U.S.L.W. 3245 (1993).

Recantation is not a defense to an action brought under 18 U.S.C. § 1621. United States v. Norris, 300 U.S. 564, 573-74 (1937); United States v. Denison, 663 F.2d 611, 616 n.6 (5th Cir.

10

1981).  Recantation may have a bearing on whether an accused perjurer intended to commit the crime.  See Beckanstin v. United States, 232 F.2d 1, 4 (5th Cir. 1956).  The district court's instruction, however, adequately covered the relevant issue of intent.  Further, McAfee's counsel, in both his opening and closing, called the jury's attention to McAfee's recantation of his 1987 testimony.  Thus, the district court did not abuse its discretion in denying McAfee's requested recantation instruction.

V.  Materiality of Statements in Count 4

Under § 1623(c), the Government must prove that "each declaration was material to the point in question." Materiality is a question of law.  United States v. Salinas, 923 F.2d 339, 340 (5th Cir. 1991).  McAfee contends that the district court erred in concluding as a matter of law that his statements alleged in Count 4 were material.

We review the district court's materiality finding de novo. Id.  Testimony is material if it "would have the natural effect or tendency to influence" the decision of the tribunal to which it is addressed.  United States v. Gremillion, 464 F.2d 901, 905 (5th Cir.), cert. denied, 409 U.S. 1085 (1972).  We are unconvinced by McAfee's attempt to extend the definition of tribunal, an obvious reference to the court, to include the questioning attorney.  At issue in the civil cases were numerous racketeering activities, one of which was the writing of checks to phantom entities to remove cash from Amarillo By-Products to finance commercial bribes. Chester Peterson was one of the names on the checks.  McAfee's

11

statements were relevant to determining which checks to Chester Peterson were valid and which were used as a phantom entity. Thus, each declaration was relevant to a point in question, and the district court did not err in determining that McAfee's statements were material.

VI.  Cross-examination of John Lovell

McAfee argues that the district court abused its discretion in limiting the cross-examination of John Lovell. McAfee alleges that Garth Merrick, the president of a company represented by John Lovell, made a $20,000 loan to an individual who had previously been deposed in one of the civil cases. McAfee also alleges that Lovell instructed an investigator to supply a listening device to a non-party to tape record a meeting of individuals who were witnesses, but not parties, to the civil suits. The investigator also recorded a telephone conversation with McAfee. McAfee contends that he should have been able to cross-examine Lovell on these points.

We review the exclusion of evidence only for an abuse of discretion. United States v. Eakes, 783 F.2d 499, 506-507 (5th Cir.), cert. denied, 477 U.S. 906 (1986). With respect to the alleged $20,000 loan by Garth Merrick, the record shows that Lovell knew nothing about the loan prior to its occurrence, and when he did discover it, he brought it out during the direct examination of Merrick. It is the practice of this Circuit to exclude highly prejudicial evidence that attempts to taint a witness's character through guilt by association. See United States v. Ochoa, 609 F.2d

12

198, 205 (5th Cir. 1980).

Under 18 U.S.C. § 2511(2)(d), an individual is permitted to tape record so long as one of the parties to the communication has given prior consent to such interception. Because the party tape recording the meeting was present, nothing illegal occurred. Moreover, there is no evidence in the record that reflects that an individual at the meeting would become a party in a future lawsuit or that Lovell authorized the taping of the conversation with McAfee. The district court did not abuse its discretion in holding that cross-examination on those issues would have little probative value and should be excluded.

VII. <u>Sentencing on Count 2</u>

Finally, McAfee contends that the district court's application of the sentencing guidelines to Count 2 of the indictment was improper.[5] The district court found by a preponderance of the evidence that the 1990 statement alleged in Count 2 was false and sentenced McAfee on Count 2 under the guidelines. We give due regard to the opportunity of the trial court to judge the credibility of the witnesses and shall accept the findings of fact of the trial court unless they are clearly erroneous. 18 U.S.C. § 3742(e); <u>United States v. Medina-Saldana</u>, 911 F.2d 1023, 1024 (5th Cir. 1990).

---

[5] Because in each count one statement occurred prior to the effective date of the sentencing guidelines, and one occurred after the guidelines were adopted, the count would be treated as preguideline if only the preguidelines statement was false. On the other hand, if the post-guideline statement was false or if both statements were false, the count would be treated as post-guideline.

13

The record reflects substantial evidence that McAfee's 1990 testimony regarding "Southwest Exchange" was false. Warren Pugh testified at trial that although he did use the d/b/a "Southwest Exchange," he was not the "Southwest Exchange" denoted on the checks questioned about in the deposition. Further, Richard Jerome, a fellow owner of Amarillo By-Products, testified that "Southwest Exchange" was really McAfee, the president of Amarillo By-Products, David Kennedy, and himself. Given this testimony, together with the other evidence, the district court was not clearly erroneous in finding that McAfee's 1990 testimony was false.

## CONCLUSION

For the foregoing reasons, Mcafee's conviction and sentence are affirmed.

AFFIRMED.