**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 7, 2013

No. 12-10909

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GUADALUPE ALCANTAR,

Defendant - Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Defendant-Appellant Guadalupe Alcantar pleaded guilty to violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and was sentenced to 63 months of imprisonment, reserving his appeal rights. He now appeals the district court's denial of his motion to dismiss the indictment and the four-level sentencing enhancement imposed under U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2K2.1(b)(6)(B) (2011). We AFFIRM.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Abilene Police Department ("APD") began investigating Alcantar for cocaine possession with intent to deliver. During a traffic stop, APD officers searched Alcantar and discovered that he was in possession of cocaine. A

No. 12-10909

subsequent search of his residence revealed various drug paraphernalia and drug-manufacturing materials, including Ziploc bags with cut corners, digital scales, a cutting agent, and a measuring cup with cocaine residue. APD officers further discovered a dismantled 12-gauge shotgun. Both the drug paraphernalia and the firearm were located in Alcantar's bedroom. He was charged by the state of Texas with possession of cocaine with intent to deliver. Alcantar had previously been convicted of aggravated assault of a police officer, which is a felony under Texas law.

Alcantar was indicted for "Convicted Felon in Possession of a Firearm" in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and "Possession of an Unregistered Firearm" in violation of 26 U.S.C. §§ 5861(d) and 5871. He filed a motion to dismiss the indictment, which the district court denied. In his motion, Alcantar argued that § 922(g)(1) was unconstitutional, both on its face and as applied, because it exceeded Congress's Commerce Clause authority. Acknowledging that his argument was foreclosed by existing Fifth Circuit precedent, Alcantar sought to preserve his claim for appeal, urging that recent Supreme Court decisions may affect our precedents on this issue.[1]

Alcantar pleaded guilty to the charge of "Convicted Felon in Possession of a Firearm." The pre-sentence report ("PSR") recommended assessing a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) based on Alcantar's use or possession of a firearm in connection with another felony offense, namely, the state charge of possession of cocaine with the intent to deliver. Alcantar filed a written objection to the proposed enhancement, arguing that although the proximity of the firearm to the drug paraphernalia would

---

[1] Alcantar's motion relied on the Court's decisions in *United States v. Morrison*, 529 U.S. 598 (2000), and *Jones v. United States*, 529 U.S. 848 (2000). Thereafter, he also relied on the recently-decided case of *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012).

No. 12-10909

normally warrant the enhancement, the dissembled state of the firearm, his lack of knowledge regarding reassembling it, and the absence of ammunition rendered the firearm useless in facilitating another offense.[2]

In an addendum to the PSR, a probation officer reported that a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") confirmed that the firearm was "designed to readily, and easily, be disassembled and reassembled using the three pieces recovered." According to the probation officer, the ATF agent "estimated it could take as little as 10 to 30 seconds to assemble the firearm's three pieces depending on the individual's knowledge of the firearm," and he explained that the "simplicity of the break down of the firearm negated the need for instructions for assembly and also provided the potential to facilitate the offense."

The district court overruled Alcantar's objection and found that the "4-level increase [was] justified in that the firearm was possessed in connection with another felony offense." The court adopted the PSR and sentenced Alcantar to 63 months of imprisonment. Alcantar timely appealed.

## DISCUSSION

### I. Constitutionality of § 922(g)(1)

Alcantar argues that his conviction should be vacated because § 922(g)(1) exceeds Congress's authority under the Commerce Clause. In *United States v. Wallace*, 889 F.2d 580, 583 (5th Cir. 1989), we concluded that § 922(g)(1) is a valid exercise of Congress's authority under the Commerce Clause. Following *Wallace*, we have consistently upheld the constitutionality of § 922(g)(1),

---

[2]   During the sentencing hearing, Alcantar also presented the testimony of a staff investigator for the Federal Public Defender. The investigator testified that the firearm was discovered in three different pieces and that no ammunition was found in the residence. The investigator further reported—based on his conversations with Alcantar's girlfriend—that Alcantar did not know how to assemble the firearm and that the firearm had been left at the residence by the former husband of Alcantar's girlfriend when he moved away.

No. 12-10909

including after the Supreme Court's decisions concerning Congress's Commerce Clause authority in *United States v. Lopez*, 514 U.S. 549 (1995), *Jones v. United States*, 529 U.S. 848 (2000), and *United States v. Morrison*, 529 U.S. 598 (2000). *See United States v. Schmidt*, 487 F.3d 253, 255 (5th Cir. 2007) (holding that the Court's decisions in *Lopez*, *Jones*, and *Morrison* "do not alter th[e] conclusion" that § 922(g)(1) is constitutional); *United States v. Daugherty*, 264 F.3d 513, 518 (5th Cir. 2001) ("[T]he constitutionality of § 922(g) is not open to question."); *United States v. De Leon*, 170 F.3d 494, 499 (5th Cir. 1999) ("This court has repeatedly emphasized that the constitutionality of § 922(g)(1) is not open to question.").

Alcantar argues on appeal that the Supreme Court's decision in *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566, 2587 (2012), overrules our long-standing precedent upholding § 922(g)(1).  Under our rule of orderliness, only an intervening change in the law (such as by a Supreme Court case) permits a subsequent panel to decline to follow a prior Fifth Circuit precedent. *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.") Such an intervening change in the law must be unequivocal, not a mere "hint" of how the Court might rule in the future. *See In re Texas Grand Prairie Hotel Realty, L.L.C.*, 710 F.3d 324, 331 (5th Cir. 2013) (explaining that in order to diverge from our prior precedent a "Supreme Court decision must be more than merely illuminating with respect to the case before us, because a panel of this court can only overrule a prior panel decision if such overruling is unequivocally directed by controlling Supreme Court precedent").

Whatever the merits of Alcantar's argument on this point, we are not at liberty to overrule our settled precedent because the Supreme Court's decision

No. 12-10909

in *National Federation* did not overrule it.[3] *National Federation* involved, in relevant part, a challenge to the "individual mandate" portion of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010). 132 S. Ct. at 2577. It did not address the constitutionality of § 922(g)(1), and it did not express an intention to overrule the precedents upon which our cases—and numerous other cases in other circuits—relied in finding statutes such as § 922(g)(1) constitutional. *See United States v. Roszkowski*, 700 F.3d 50, 58-59 (1st Cir. 2012), *cert. denied*, 133 S. Ct. 1278 (2013) ("[E]ven if [*National Federation*] changed the Supreme Court's Commerce Clause jurisprudence, it did nothing to undermine the validity of 18 U.S.C. § 922(g)(1)."). Accordingly, we are bound by our prior precedents and conclude that this issue is foreclosed.[4]

## II. Applicability of Enhancement

Alcantar further argues that the district court procedurally erred by assessing the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Because Alcantar preserved this argument in the district court, we review the application of the Guidelines *de novo* and the district court's factual findings—along with the reasonable inferences drawn from those facts—for clear error. *See United States v. Harris*, 702 F.3d 226, 229 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1845 (2013); *United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010). "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole." *Coleman*, 609 F.3d at 708.

---

[3] For this reason, we do not reach the Government's argument that the Commerce Clause discussion in *National Federation* was dicta.

[4] We note that while Alcantar seeks *de novo* review of the district court's decision, the Government suggests that plain error review should apply because Alcantar may not have preserved this issue for our review. Regardless of whether we review the district court's denial of Alcantar's motion *de novo* or for plain error, we affirm the court's decision because this issue is foreclosed by our prior precedent.

No. 12-10909

U.S.S.G. § 2K2.1(b)(6)(B) provides for a four-level increase in the offense level "[i]f the defendant used or possessed any firearm . . . *in connection with* another felony offense; *or* possessed or transferred any firearm . . . with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." (emphasis added). The application notes provide that, in examining the "in connection with" element, the enhancement applies, in general, "if the firearm or ammunition facilitated, or had the potential for facilitating, another felony offense or another offense, respectively." U.S.S.G. § 2K2.1(b)(6)(B), cmt. n.14(A). The application notes further explain that U.S.S.G. § 2K2.1(b)(6)(B) "appl[ies] . . . in the case of a drug trafficking offense in which a firearm is *found in close proximity* to drugs, drug-manufacturing materials, or drug paraphernalia. In these cases, application of [U.S.S.G. § 2K2.1(b)(6)(B)] is warranted because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively." U.S.S.G. § 2K2.1(b)(6)(B), cmt. n.14(B)(ii) (emphasis added).

The Guidelines's "application notes [are] authoritative unless [they] violate[] the Constitution or a federal statute, or [are] inconsistent with, or a plainly erroneous reading of, that [G]uideline." *See United States v. Miller*, 607 F.3d 144, 148 n.2 (5th Cir. 2010) (citation and internal quotation marks omitted); *see also Stinson v. United States*, 508 U.S. 36, 38 (1993). Here, because the other felony—possession of cocaine with intent to deliver—is a drug trafficking offense, application note 14(B)(ii) applies. *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iv) ("'Drug trafficking offense' means an offense under federal, state, or local law that prohibits . . . the possession of a controlled substance . . . with intent to . . . distribute . . . .")[5]; *see also United States v. Marban-Calderon*, 631

---

[5] This definition of "drug trafficking offense" explicitly includes "possession . . . with intent to . . . distribute" and, therefore, is unlike the definition construed in *United States v.*

F.3d 210, 212 (5th Cir. 2011). Therefore, the district court could assess the enhancement after finding that the firearm was discovered in close proximity to Alcantar's drug-manufacturing materials or drug paraphernalia.[6] *See United States v. Jeffries*, 587 F.3d 690, 692 (5th Cir. 2009) (explaining that with respect to drug trafficking offenses, application note 14(B)(ii) provides that the "the enhancement automatically applies" when "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia").

Here, according to the PSR, APD officers discovered drug paraphernalia, drug-manufacturing materials, and a dismantled firearm in Alcantar's bedroom. The district court could adopt these facts as described by the PSR unless Alcantar presented "rebuttal evidence or otherwise demonstrate[d] that the information in the PSR is unreliable." *See United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007); *see also Harris*, 702 F.3d at 230. Alcantar did not present evidence rebutting the proximity of the firearm to the drug paraphernalia and drug-manufacturing equipment. Instead, based on the testimony of the Federal Public Defender's staff investigator, he asserted that because the unloaded firearm was in three pieces and he did not know how to assemble it, the firearm was "decidedly unhelpful" to the distribution of drugs. He also argued that the Government's contention that the firearm could be assembled in as little as ten to thirty seconds did not account for the

*Silva-De Hoyos*, 702 F.3d 843, 847-48 (5th Cir. 2012), which required actual distribution (not mere possession with intent to distribute) to qualify as a "drug trafficking offense."

[6] Alcantar urges that the district court should have applied the three-part analysis of *United States v. Juarez*, 626 F.3d 246, 253 (5th Cir. 2010), to determine whether the firearm had the potential to facilitate another felony offense. However, *Juarez* is inapplicable here because it applies the general rule set forth in application note 14(A) to another felony offense not involving drug trafficking, rather than the more specific analysis of application note 14(B)(ii), which applies here because the other felony involves a drug trafficking offense. *See id.* at 255.

"uncontroverted evidence" showing that he did not have the capacity to assemble the shotgun.[7]

Despite Alcantar's arguments, the proximity of the firearm to the drug paraphernalia and drug-manufacturing materials makes it plausible for the district court to have concluded that Alcantar possessed the firearm in connection with another felony offense.[8]  *See* U.S.S.G. § 2K2.1(b)(6)(B), cmt. n.14(B)(ii); *see also Jeffries*, 587 F.3d at 692-93.  Thus, regardless of whether we would have decided this issue the same way, it was not clear error to find as the district court did.  Therefore, the court did not err in assessing the four-level enhancement under § 2K2.1(b)(6)(B).[9]

AFFIRMED.

---

[7] Although we have observed that the "inoperable character" of a firearm does not prevent it from being used or possessed in connection with another felony because "an unloaded or broken gun may be of use in a criminal act," *United States v. Paulk*, 917 F.2d 879, 882 (5th Cir. 1990), we need not reach that issue here because Alcantar does not contend that the firearm was broken or in need or repair.  Instead, he merely asserts that it was "inoperable" because it was disassembled.  The Government presented evidence that the firearm could be assembled in as little as ten to thirty seconds and, therefore, the district court plausibly concluded that this firearm was capable of being used or possessed in connection with Alcantar's felony drug offense.

[8] Because U.S.S.G. § 2K2.1(b)(6)(B) applies to possession of either a firearm or ammunition, the district court did not err in concluding that the absence of ammunition was not dispositive.  *See* U.S.S.G § 2K2.1(b)(6)(B).

[9] Alcantar also argues that the Government failed to show that he possessed the firearm with knowledge or intent that it would be used in connection with another felony offense.  Importantly, U.S.S.G. § 2K2.1(b)(6)(B) requires that the defendant either (1) "[u]sed or possessed any firearm in connection with another felony offense"; *or* (2) "possessed or transferred any firearm . . . with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  Because the district court did not err in concluding that Alcantar "used or possessed any firearm in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B), we need not consider whether U.S.S.G. § 2K2.1(b)(6)(B)'s enhancement could be assessed based on the possession of the firearm with knowledge or intent that it would be used in connection with another felony offense.