# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

No. 95-11053

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DENNIS WAYNE HOPE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

December 10, 1996

Before POLITZ, Chief Judge, SMITH and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

Dennis Wayne Hope appeals his convictions for carjacking,[1] robbery,[2] using

a firearm during the commission of a crime of violence,[3] and illegally possessing

_____

[1] 18 U.S.C. § 2119.

[2] 18 U.S.C. § 1951(a).

[3] 18 U.S.C. § 924(c)(1).

a firearm.[4]  At trial he admitted to all charges except the two firearm counts but he appeals all counts, contending that he did not have a fair trial because he was shackled in the presence of the jury and because the prosecution made improper statements in the presence of the jury.  In addition, the firearm counts were challenged for being based on evidence which should have been suppressed as the product of an illegal inventory search.  Concluding that Hope was not denied a fair trial we affirm his convictions on the six counts which he admitted.  Concluding that the court erred in admitting evidence obtained in an illegal inventory search of Hope's vehicle, we reverse the convictions on the two firearm counts.

## Background

On November 26, 1994 Hope escaped from Texas state prison where he was serving an 80-year sentence for aggravated robbery.  Several days later he stole a car at knife point from 83-year-old Elvin Mitchell.  In the process, Hope severely cut Mitchell by yanking the knife away when, in his fright, Mitchell grabbed the blade.  After dropping Mitchell off bleeding on the side of the road, Hope set out to rob the same stores he previously had been convicted of robbing.

Between December 1, 1994 and January 16, 1995 Hope robbed four Albertson's grocery stores in the Dallas area.  He admits to the robberies and

---

[4] 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

admits to using a gun in the commission of one. During the course of his crime spree he set up camp in Memphis, Tennessee at a boarding house owned by James Money. On February 2, 1995 Texas Department of Criminal Justice officers, FBI agents, and Memphis police officers arrested Hope at the Denim and Diamonds Nightclub in Memphis. While conducting an inventory search of a Jaguar driven by Hope to the nightclub, Memphis police officers found a loaded 9 millimeter Taurus handgun and a police scanner.

The following day, two officers of the Texas Department of Criminal Justice determined where Hope had been staying and proceeded to Money's boarding house. Three Memphis police officers also arrived to assist with the investigation. While the officers were there, Hope telephoned Money from prison and told him not to allow the police to search his room or his Honda CRX that was parked on the front lawn. Money, however, consented to a search of Hope's room and requested that the police tow the car off his property. The police made a warrantless search of the room and found a loaded .45 caliber handgun and $14,000. The Memphis police officers inventoried and impounded the Honda, discovering partially full boxes of 9 millimeter and .25 caliber ammunition, a BB gun with the barrel bored out, and other miscellaneous items. They turned over this evidence to the Texas officers.

At the pretrial suppression hearing the district court excluded the evidence found in Hope's room but denied the motion to suppress the objects found in the Honda. During the course of the trial, the government introduced into evidence the contents of the Honda. Hope's counsel did not object to the introduction of the .25 caliber ammunition and stated "no objection" when the other items were offered. Hope timely appealed.

Analysis

1. Wrongfully seized evidence

We first address Hope's contention that the district court erred in failing to suppress the items obtained in the search of the Honda. Hope claims that the car was impounded illegally and inventoried in violation of the fourth amendment. We review the district court's fact finding for clear error and its conclusion as to the reasonableness of the search *de novo*,[5] reviewing the evidence at both the suppression hearing and trial in the light most favorable to the prevailing party.[6]

The police may impound vehicles for public safety and community caretaking.[7] Because Hope would be returned to serve his 80-year sentence in

---

[5]**United States v. Andrews**, 22 F.3d 1328 (5th Cir.), cert. denied, 115 S.Ct. 346 (1994).

[6]**United States v. Ponce**, 8 F.3d 989 (5th Cir. 1993).

[7]**South Dakota v. Opperman**, 428 U.S. 364 (1976).

Texas state prison, the police acted properly in complying with Money's request to remove the car from his property. Hope had no right to leave his car on Money's property indefinitely while he served his prison sentence.[8]

An inventory search is reasonable and, thus, not violative of the fourth amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (i) protecting the property of the vehicle's owner, (ii) protecting the police against claims or disputes over lost or stolen property, and (iii) protecting the police from danger.[9] At the pretrial suppression hearing the district court ruled that the inventory search of the Honda was valid because the only evidence before the court was the testimony of an officer that he believed an inventory search was performed. We cannot accept the district court's finding because, as a matter of law, the officer's testimony was insufficient to prove that the police had in fact followed standard procedures or guidelines in conducting the inventory search of the Honda. We have held that a police officer's unrebutted

---

[8]See **United States v. Gravitt**, 484 F.2d 375 (5th Cir. 1973) (explaining that the expectation that owners of the car would be in custody made it reasonable to seize and conduct inventory search of car), cert. denied, 414 U.S. 1135 (1974); **United States v. Kelehar**, 470 F.2d 176 (5th Cir. 1972) (holding that police could impound arrestee's car located in restaurant parking lot with the consent of manager).

[9]**Opperman**; **United States v. Privett**, 68 F.3d 101 (5th Cir. 1995), cert. denied, 116 S.Ct. 1862 (1996).

testimony that he followed standard procedures was sufficient to validate an inventory search.[10] But even that minimal threshold was not met in the case at bar where we find no testimony that referred to Memphis police department guidelines, or that they were followed, but only the statement by the officer that, "I believe the Memphis police did inventory the vehicle."

The record is devoid of any evidence that standard inventory procedures were in place and were, in fact, followed by the Memphis police when they searched the Honda. The searching officer turned over the evidence found to the Texas officers and did not bag and tag same as the search procedures prescribed. It is beyond serious debate that the prosecution bears the burden of establishing that any evidence submitted, which resulted from an inventory search, was the result of a search conducted in accordance with known, established police procedures. That did not occur herein and the evidence found in the search of the Honda should not have been admitted in evidence.

The government maintains that Hope's attorney waived the right to object to the evidence by stating "no objection" when the items were offered at trial. We have held, however, that where there has been a pretrial motion to suppress, the

---

[10]**United States v. Bullock**, 71 F.3d 171 (5th Cir. 1995), cert. denied, 116 S.Ct. 1365 (1996).

"failure to reiterate the objection [does] not waive it."[11] Nor may the mere stating "no objection" be taken as an affirmative waiver absent convincing indication that counsel was doing more than just recognizing that the district court had already ruled on the issue *in limine*.[12]

Finally, the government contends that the illegal search was harmless error. A conviction will be reversed only if the tainted evidence substantially affected the verdict.[13] As to the first firearm count, the government asserts that the exclusion of the .25 caliber ammunition would have had no substantial impact on the verdict. We are not persuaded. The only physical evidence linking Hope to the use of a small caliber, semiautomatic handgun, was the seized ammunition.

Nor can we say that the use of the BB gun seized from the Honda, which factored heavily into impeaching Hope, was not significant evidence in the case as presented. We cannot conclude that the use of that illegally seized evidence was merely harmless error.

---

[11]**United States v. Cruz**, 581 F.2d 535, 542 (5th Cir. 1978), overruled on other grounds by **United States v. Causey**, 834 F.2d 1179 (5th Cir. 1987).

[12]Compare **United States v. Mireles**, 570 F.2d 1287 (5th Cir. 1978) (holding that where court had not yet ruled on motion to suppress and defendant's counsel stated "no objection" to previously objected-to evidence, defendant was deemed to have abandoned the motion to suppress).

[13]**United States v. Gadison**, 8 F.3d 186 (5th Cir. 1993).

2. Shackling

Hope maintains that the district court deprived him of a fair trial by shackling him throughout the trial. We review a district court's decision to shackle a defendant for abuse of discretion.[14]

The Supreme Court has labeled shackling an inherently prejudicial practice that should be allowed only if it is justified by an essential state interest.[15] We have elaborated on the essential interests that justify shackling a defendant:

> While a criminal defendant is entitled to the physical indicia of innocence, a court is justified in ordering him handcuffed and shackled during trial where there is a danger of escape or injury to the jury, counsel, or other trial participants.[16]

We have also held that the district court is required to state reasons on the record, outside the presence of the jury, why it has chosen to shackle a defendant.[17]

In the instant case, defense counsel objected to the shackling of Hope at the beginning of the trial. The objection was overruled. The district court assigned no reasons. This failure to assign reasons was error, but under the specific facts of this

---

[14]**United States v. Weeks**, 919 F.2d 248 (5th Cir. 1990), cert. denied, 499 U.S. 954 (1991).

[15]**Holbrook v. Flynn**, 475 U.S. 560 (1986).

[16]**Wilkerson v. Whitley**, 16 F.3d 64 (5th Cir.), rehearing *en banc* on other grounds, 28 F.3d 498 (5th Cir. 1994), cert. denied, 115 S.Ct. 740 (1995).

[17]**United States v. Theriault**, 531 F.2d 281 (5th Cir.), cert. denied, 429 U.S. 898 (1976).

8

case we need not remand for the assignment of those reasons. They are readily apparent to us from the record. Hope not only had been sentenced previously for aggravated robbery, but he was an escapee from prison, thus posing both the threat of injury to individuals in the courtroom and the threat of escape. We perceive no reversible error in the trial court's decision to shackle Hope.

3. Statements by the prosecutor

Hope challenges certain questions asked and statements made by the prosecutor, claiming that they were improper. Our review of the record, in light of the contention made in the brief, discloses no merit in this assignment of error.

The convictions and sentences on all counts, other than Counts Three and Six, are AFFIRMED; the convictions on Counts Three and Six are REVERSED and the sentences thereon are VACATED.