**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 30, 2009

Charles R. Fulbruge III
Clerk

No. 07-11234

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

GARY DON ROBINSON

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:07-CR-00029

Before GARWOOD, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Gary Don Robinson appeals his conviction on thirty-three counts arising from his alleged conspiracy to make, possess, and utter counterfeit securities; uttering counterfeit securities; and aiding and abetting. Because the district court erred in shackling Robinson throughout the course of his trial and the Government has failed to prove beyond a reasonable doubt that the shackling did not contribute to the verdict, we REVERSE and REMAND for a new trial.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**BACKGROUND**

Gary Don Robinson, Deanda Lashae Crayton, and Cynthia Elaine Watts were charged by indictment with one count of conspiring to make, possess, and utter counterfeit securities of an organization with the intent to deceive another person and organization in violation of 18 U.S.C. § 371 (count one) and with 32 counts of uttering counterfeit securities of an organization with the intent to deceive another person and organization in violation of 18 U.S.C. §§ 513(a) and 2 (counts 2-33). Counts 2 through 15 alleged that the defendants made, possessed, and uttered counterfeit checks of Citibank Delaware in the name of "Eagle Trucking and Transport." Counts 16 through 33 alleged that the defendants made, possessed, and uttered counterfeit checks of Citibank Delaware in the name of "Engaged Energy." Crayton and Watts entered into a plea agreement with the Government and agreed to testify against Robinson.

Immediately before the parties gave their opening statements to the jury, Robinson, who represented himself with the assistance of standby counsel, asked the court if he could approach the bench "for a preliminary matter" to raise an objection outside the presence of the jury. The court refused his request. Robinson then raised the following objection: "I know some of the jurors might have seen me walk in leg shackles. I object to being . . . brought in before the presence of the jury in leg shackles." The court overruled the objection without explanation and allowed the Government to proceed with its opening statement. On appeal, Robinson asserts that he was shackled throughout the trial; the Government has not argued to the contrary.

The evidence introduced at trial was in sum as follows. The government offered as exhibits several cashed checks purportedly drawing on accounts of Engaged Energy and Eagle Trucking & Transport. The checks stated that they were issued by "CITIBANK DELAWARE" and included Citibank's routing

2

number, but with invalid account numbers. A Citibank vice-president testified that Citibank was a national banking association, a subsidiary of Citigroup, operating commercial and retail banking operations throughout the United States and abroad. He testified that the bank was the largest financial organization in the United States. He testified that Citibank did not have accounts in the name of Engaged Energy or Eagle Trucking & Transport.

Some of the checks were made payable to "G.D. Robinson" and cashed using Robinson's driver's license number. Watts and a handwriting expert testified that Robinson had endorsed some of these checks. Some of the checks also had various descriptors written on them that matched Robinson, including his sex, race, date of birth, license expiration date, and approximate height. When Robinson was arrested, the police found blank Engaged Energy checks and Eagle Trucking & Transport checks in his car. Two witnesses testified that Robinson attempted to cash checks similar to the checks found in his car the day that he was arrested.

Some of the counts against Robinson were based on checks cashed by Crayton, Watts, and another woman named Lula Hunter. Crayton, Watts, and Hunter testified that they had each cashed checks given to them by Robinson drawn on bank accounts purporting to belong to Engaged Energy or Eagle Trucking & Transport. Crayton and Watts were both in romantic relationships with Robinson and had access to the equipment used to forge the checks, including a stamp of Robinson's signature used on some of the forged checks. Crayton testified that she stole a check giving rise to one of the counts against Robinson and cashed it herself without his knowledge. Crayton also admitted that she had given perjured testimony in the past to get a reduced sentence.

Robinson moved for a judgment of acquittal at the close of the Government's case, and the court denied the motion. Robinson did not testify

on his own behalf. After the defense rested, standby counsel informed the court that Robinson had asked counsel to "take over the conclusion of his case."

On September 25, 2007, the jury found Robinson guilty on all counts. On October 1, 2007, Robinson, through counsel, filed a renewed motion for a judgment of acquittal, and the court denied the motion. On October 9, 2007, Robinson, pro se, filed a motion for new trial dated October 4, 2007, arguing, among other things, that he was entitled to a new trial because he was shackled during trial despite the absence of any record of violence or misbehavior. The court denied the motion for a new trial without comment.

## DISCUSSION

### I. Sufficient Evidence Supports the Jury's Guilty Verdict.

We first address whether there was sufficient evidence to support the jury's verdict. Our review of the sufficiency of the evidence is "'highly deferential to the verdict.'" *United States v. Elashyi*, 554 F.3d 480, 491 (5th Cir. 2008) (quoting *United States v. Gulley*, 526 F.3d 809, 816 (5th Cir.), *cert. denied*, ___ U.S. ___, 129 S.Ct. 159 (2008). We will reverse for insufficient evidence only when the evidence, when reviewed in the light most favorable to the government, would not allow a rational fact finder to find every element of the offense beyond a reasonable doubt. *Id.* at 492.

To prove an offense under § 513(a), the Government must prove that a defendant: 1) made, uttered, or possessed 2) a counterfeit or forged security 3) of an organization 4) with intent to deceive another person, organization, or government. *United States v. Chappell*, 6 F.3d 1095, 1098 (5th Cir. 1993). Section 513(a)(4) defines "organization" to include "a legal entity, other than a government, established or organized for any purpose . . . which operates in or the activities of which affect interstate or foreign commerce." § 513(c)(4). In the

present case, Citibank is the only potential "organization" as that term is defined by § 513(c)(4).[1]

Robinson asserts that Citibank was not an "organization" under § 513(c)(4) because the Government failed to demonstrate that Citibank operated in or affected interstate commerce. A vice-president of Citibank testified that Citibank, a national banking association chartered under the law of the United States and insured by the Federal Deposit Insurance Corporation, transacted both commercial and retail banking operations throughout the United States and internationally, and was the largest financial organization in the United States. The vice-president's testimony satisfies the interstate commerce requirement.

Robinson also asserts that the forged checks were not securities of Citibank because they were not drawn on legitimate Citibank accounts. This court has already held that forged checks are a security of the bank upon which they purport to be drawn, even when there is no actual account matching the check. *Chappell*, 6 F.3d at 1097, 1099 (holding that forged checks that "bore inaccurate routing and transit numbers" were securities of bank). In the present case, there was sufficient evidence that forged checks were securities of Citibank because the checks stated that they were issued by "CITIBANK DELAWARE" and included Citibank's routing number. We conclude that the evidence in the present case was sufficient to support the jury's verdict.[2]

---

[1] The purported account holders, "Eagle Trucking and Transport" and "Engaged Energy" are fictitious, and therefore cannot be organizations under § 513(c)(4). *See United States v. Wade*, 266 F.3d 574, 581 (6th Cir. 2001).

[2] Robinson does not challenge the sufficiency of the evidence that he made, uttered, or possessed the checks giving rise to each count on which he was convicted. We wish to note, however, that although Crayton testified that she stole one of the forged checks from Robinson and cashed it without his knowledge, she testified that Robinson made and possessed the forged check before she stole it.

## II.     The District Court Violated the Due Process Clause by Requiring Robinson to Appear in Shackles Throughout Trial.

Robinson asserts on appeal that the district court violated his due process rights by having him appear in shackles throughout his jury trial. *See Deck v. Missouri*, 544 U.S. 622 (2005); *United States v. Joseph*, 333 F.3d 587, 590-91 (5th Cir. 2003); *United States v. Hope*, 102 F.3d 114, 117 (5th Cir. 1996). In *Deck*, the Supreme Court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Id*. at 629. The Court explained that visible shackling of a criminal defendant during trial "undermines the presumption of innocence and the related fairness of the factfinding process," "can interfere with a defendant's ability to participate in his own defense, say by freely choosing whether to take the witness stand on his own behalf," and "'affront[s]' the 'dignity and decorum of judicial proceedings that the judge is seeking to uphold.'" *Id*. at 630-31 (alteration in original) (quoting *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). Even before *Deck* was decided by the Supreme Court, this court held that "[s]hackling is an inherently prejudicial practice, permitted only when justified by an essential state interest specific to each trial." *Joseph*, 333 F.3d at 590-91; *see also Hope*, 102 F.3d at 117. Inexplicably, the Government fails to cite *Deck*, *Joseph*, or *Hope* in its brief to this court.[3]

Of course, shackling is not always prohibited. There may be an essential interest justifying shackling where there is a danger of escape or injury to trial participants. *Joseph*, 333 F.3d at 591; *Hope*, 102 F.3d at 117. But the district court must state the reasons for which it has chosen to shackle the defendant on

---

[3] Attorneys are reminded of their ongoing duty of candor to the court. Misciting cases and failing to cite controlling precedent while arguing a clearly inapplicable standard are not consistent with compliance with this duty.

the record outside of the presence of the jury or exceptional circumstances justifying shackling must be apparent on the record. *Joseph*, 333 F.3d at 591; *Hope*, 102 F.3d at 117-18. In the present case, the district court refused to provide any reason for shackling Robinson, even after Robinson made a proper objection. Nor is any reason readily apparent from the record. *See Deck*, 544 U.S. at 635 ("If there is an exceptional case where the record itself makes clear that there are indisputably good reasons for shackling, it is not this one.").

Although the district court violated Robinson's due process rights by having him appear in shackles throughout his jury trial, we must still decide whether a new trial is warranted. The Government contends that the conviction should be affirmed because Robinson has failed to offer any evidence of prejudice, relying on this court's opinion in *United States v. Diecidue*, 603 F.2d 535, 549 (5th Cir. 1979). Again, the Government fails to cite the correct cases. Its reliance on *Diecidue* is incorrect because that case did not involve "situations of unusual restraint such as shackling of defendants during trial." *Id*. Where unjustified shackling is imposed by a district court, as in the present case, "the defendant need not demonstrate actual prejudice to make out a due process violation." *Deck*, 544 U.S. at 635. Rather, "[t]he State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'" *Id*. (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

The Government makes no attempt to meet its burden in the present case, and we hold that the record does not establish beyond a reasonable doubt that the district court's error did not contribute to the verdict. The district court overruled Robinson's objection to being shackled in the view of the jury, supporting Robinson's assertion that he was shackled throughout trial. Tellingly, the Government does not assert otherwise, but instead argues that there is only one mention of Robinson wearing shackles *in the record*. This

argument is unpersuasive because there is no reason to expect that the record would contain any discussion of Robinson's shackles after the district court overruled his objection. As the Supreme Court observed in *Deck*, "the practice will often have negative effects, but – like 'the consequences of compelling a defendant to wear prison clothing' or of forcing him to stand trial when medicated – those effects 'cannot be shown from a trial transcript.'" *Id*. at 635 (quoting *Riggins v. Nevada*, 504 U.S. 127, 137 (1992)).

Moreover, Robinson asserts on appeal that he decided not to testify on his own behalf because of the prejudice that would result from drawing the jury's attention to his shackles. This concern was identified in *Deck* as one basis for holding that the practice is inherently prejudicial. *Id*. at 631 ("[Shackles] can interfere with a defendant's ability to participate in his own defense, say by freely choosing whether to take the witness stand on his own behalf."). The Government makes no attempt to demonstrate that Robinson's choice not to testify as a result of the district court's error was not prejudicial. Because the Government has not proven beyond a reasonable doubt that the shackling did not contribute to the verdict, we must reverse and remand for a new trial. *See id*. at 635.

### III. Robinson's Challenges to the Indictment Lack Merit.

Robinson argues that the indictment was insufficient and should have been dismissed because it failed to allege an interstate commerce nexus as an element of § 513(a), the jury charge constructively amended the indictment, and the Government knowingly introduced perjured testimony before the grand jury in violation of 18 U.S.C. § 1623. He also asserts that the district court abused its discretion in denying his motions for an eight-day extension of the time to file pre-trial motions. Robinson's challenges to the indictment are without merit.

This court will not reverse for minor deficiencies in an indictment which do not prejudice a defendant. *United States v. Chappell*, 6 F.3d 1095, 1099 (5th

Cir. 1993). The indictment in the present case alleged that Robinson "did make, possess, and utter, forged and counterfeited securities of an organization, as that term is defined in [18 U.S.C.§] 513(c)(4), with the intent to deceive another person and organization." The individual counts set out the date of the offense, the name of the drawer (Eagle Trucking or Engaged Energy), the name of the financial institution (Citibank Delaware), and the amount of the check. By alleging that Robinson 1) made, uttered, or possessed 2) forged and counterfeited securities 3) of an organization 4) with intent to deceive another person and organization, Robinson's indictment set forth the essential elements of § 513(a) and, thus, was not insufficient. *See Chappell*, 6 F.3d at 1099-1100. Nor has Robinson shown that the jury charge, which defined an "organization" as a legal entity "which operates in or the activities of which affect interstate or foreign commerce," constructively amended the indictment. *See United States v. Robles-Vertiz*, 155 F.3d 725, 728 (5th Cir. 1998) (observing that "[a] constructive amendment occurs when the government changes its theory during trial so as to urge the jury to convict on a basis broader than that charged in the indictment, or when the government is allowed to prove an essential element of the crime on an alternative basis permitted by the statute but not charged in the indictment") (internal quotation marks and citation omitted).

Robinson also argues that the district court should have dismissed the indictment because the Government knowingly introduced perjured testimony before the grand jury in violation of 18 U.S.C. § 1623. There is no evidence of any deliberate attempt to mislead the grand jury. Even if Robinson could show that a witness knowingly provided false testimony before the grand jury, Robinson has not shown that the Government sponsored such perjury. *United States v. Strouse*, 286 F.3d 767, 768 (5th Cir. 2002). The other issues Robinson raises on appeal are either moot or are more properly addressed to the district court on remand.

## CONCLUSION

For the foregoing reasons, we must reverse and remand for a new trial.

CONVICTION REVERSED, SENTENCE VACATED, AND CASE REMANDED for a new trial.