FILED
United States Court of Appeals
Tenth Circuit

September 22, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CROSBY POWELL,

Defendant - Appellant.

No. 12-1500

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 1:11-CR-00036-KHV-1)**

---

Ty Gee, Haddon, Morgan and Foreman, P.C., Denver, Colorado, for Defendant-Appellant.

James C. Murphy, Assistant United States Attorney (John F. Walsh, United States Attorney, and Joseph Mackey, Assistant United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **LUCERO**, **MURPHY**, and **PHILLIPS**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

# I. INTRODUCTION/BACKGROUND

It is a federal crime to, inter alia, make, utter, or possess "a forged security . . . of an organization, with intent to deceive another person, organization, or government." 18 U.S.C. § 513(a). The term "security" includes checks. *Id.* § 513(c)(3)(A). An "organization" is "a legal entity, other than a government, established or organized for any purpose , . . . which operates in or the activities of which affect interstate or foreign commerce." *Id.* § 513(c)(4). "[T]he term 'forged' means a document that purports to be genuine but is not because it has been falsely altered, completed, signed, or endorsed, or contains a false addition thereto or insertions therein . . . ." *Id.* § 513(c)(2).

In 2006, United States Postal Inspectors learned Crosby Powell had deposited checks stolen from the United States mail into his accounts at TCF Bank, UMB Bank, and Wells Fargo. An investigation revealed Powell had altered payee information or forged endorsements on some of the stolen checks. The United States obtained a superseding indictment charging Powell with eleven counts of uttering or possessing forged checks, in violation of 18 U.S.C. § 513(a), and seventeen counts of possessing stolen mail, in violation of 18 U.S.C. § 1708.

The eleven § 513(a) counts are the exclusive focus of this appeal. Each of those counts followed a nearly identical format; they state that, on or about a designated date, Crosby Powell

> unlawfully and knowingly possessed and uttered securities to wit: a forged check of an organization (federally insured bank), the activities of which affected interstate commerce, with the intent to deceive federally insured banks and merchants and individuals, all in violation of Title 18, United States Code, Section[ ] 513(a) . . . .

At trial, the government sought to prove the forged checks were "of an organization" by presenting evidence that each bank *into which the forged checks were deposited* was a federally insured bank operating in interstate commerce. The jury convicted Powell on all eleven § 513(a) counts set out in the indictment.

In his briefing before this court, Powell sets out three challenges to his § 513(a) convictions, all of which are raised for the first time on appeal. Although coming at the issue from slightly different angles, all three challenges are based on the same premise: at no point during his possession or utterance of the forged checks were the checks "of" the banks into which they were deposited. This court agrees the forged checks were not "of" the depository banks. Because Powell did not raise his arguments before the district court, however, he is not entitled to relief unless he can "successfully run the gauntlet created by our rigorous plain-error standard of review." *United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012).

Powell cannot satisfy this burden as to all counts of conviction. In particular, he cannot demonstrate any error with regard to Counts 13 and 20. Even disregarding the depository banks, the record conclusively establishes, consistent with the allegations set out in the indictment, that the two relevant

checks, one underlying each count, were of an organization operating in interstate commerce. Although Powell can establish a plain error that affects his substantial rights as to Count 10, he cannot demonstrate the failure to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.* (providing this court has discretion to correct a plain error that affects substantial rights only if failure to correct the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings). As to the remaining counts, however, Powell has satisfied all four requirements necessary to obtain relief under the plain-error standard. Accordingly, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court (1) **affirms** Powell's convictions as to Counts 10, 13, and 20; and (2) **remand**s to the district court so it can vacate the remaining convictions and take any other necessary action consistent with this opinion.

## II. ANALYSIS

On appeal, Powell raises three interrelated challenges to his § 513(a) convictions: (1) the indictment is invalid on its face as it failed to charge an offense or give fair notice of the nature of the charges; (2) the government's evidence and the jury instructions amount to an unconstitutional amendment of the indictment; and (3) the convictions were not supported by sufficient evidence.

**A. Standard of Review**

Because each of the three issues identified above is raised for the first time on appeal, Powell can prevail only if he demonstrates the district court committed plain error. *United States v. De Vaughn*, 694 F.3d 1141, 1158 (10th Cir. 2012) ("[A] claim that an indictment or information fails to charge an offense is not jurisdictional. Accordingly, when a defendant raises such a claim for the first time on appeal, we review only for plain error."); *United States v. Goode*, 483 F.3d 676, 681 & n.1 (10th Cir. 2007) (holding unpreserved claims of insufficiency of the evidence are reviewed for plain error); *United States v. Brown*, 400 F.3d 1242, 1253 & n.6 (10th Cir. 2005) ("We review claims of constructive amendment raised for the first time on appeal under the plain error standard."). "Under this demanding standard," Powell "must demonstrate: (1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this [c]ourt may exercise discretion to correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *McGehee*, 672 F.3d at 876 (quotations and alteration omitted). Notably, this court applies these requirements "less rigidly" in cases, such as this one, that involve "potential constitutional error." *United States v. Pablo*, 696 F.3d 1280, 1287 (10th Cir. 2012) (quotations omitted).

**B. Analysis**

**1. Facial Validity of Indictment**

"An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008) (quotations omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quotation omitted). "Therefore, where the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *Redcorn*, 528 F.3d at 733 (quotations omitted). "An indictment need only meet minimal constitutional standards[;] . . . we determine the sufficiency of an indictment by practical rather than technical considerations." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997).

Powell's argument regarding the facial validity of the indictment is based on the following assertions: (1) the indictment specifically stated each of the forged checks was "of" a federally insured bank; (2) for purposes of § 513(a), a forged check can only be "of" the payor or payee, not a drawee or depository

bank; and (3) the government's evidence at trial demonstrated a federally insured

bank was neither a payor nor payee[1] on any of the forged checks. Given all this,

---

[1]The record reveals Powell's assertion in this regard is correct. At pages three, twenty, and twenty-one of its answer brief, the United States asserts two checks are at issue in Count 8 and one of those checks is a teller's check with UMB Bank as the payor. That assertion is incorrect. The record establishes the teller's check does not make up any part of the criminal act alleged in Count 8. The indictment makes clear on its face that only Counts 10 and 17 are supported by more than one check. Counts 10 and 17 state Powell violated § 513(a) by possessing or uttering "forged *checks* of an organization." Each of the other nine counts, specifically including Count 8, indicate Powell violated § 513(a) by possessing or uttering "*a* forged *check* of an organization." The forged check at issue in Count 8 is a check from SureWest (as payor) to Mega Hertz, Inc. (as payee), drawn on Bank of America. The SureWest check was altered so it appeared to be made out to Erica Renta (an unwitting accomplice in Powell's scheme) on behalf of, or in the care of, Mega Hertz, Inc. Renta testified she deposited the SureWest check into an account in her name at UMB Bank; withdrew the proceeds of the check in multiple large cash withdrawals; and turned the cash over to another Powell accomplice. She further testified the teller's check represented the balance left in the account after the large cash withdrawals:

> [Prosecutor]: Okay. Let's take a look at Government's Exhibit 100. It is a teller's check with a date of November 4th of 2008, made out to you, Erica Renta, for $266.09. Tell us about that?
>
> [Renta]: This is when I closed the account. It was the remaining balance left.
>
> [Prosecutor]: And if we look over to the second page, it says UMB, general ledger, debit, and does this confirm that on or about November the 4th of 2008, that you drew the last amount of money and closed the account?
>
> [Renta]: Yes.
>
> [Prosecutor]: At whose direction did you do that?
>
> [Renta]: Romeo [(Powell's accomplice)]

(continued...)

Powell asserts the indictment fails to allege a valid crime and fails to give him fair notice of the nature of the charges against him. *See* Appellant Opening Br. at 11 ("The § 513(a) counts failed to charge a cognizable crime. The counts made a claim that was refuted by the government's own evidence.").

The problem with Powell's arguments is that this court's precedents make clear "a challenge to the indictment is not a vehicle for testing the government's evidence. Rather, an indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Redcorn*, 528 F.3d at 733 (quotations and alteration omitted). Each of the § 513(c) counts is sufficient on its face. The indictment alleges that on particular dates, Powell possessed or uttered forged checks of a federally insured bank operating in interstate commerce with the intent to deceive federally insured banks, merchants, and individuals. Taking these allegations as true, the conduct alleged violates § 513(a). Whether the checks at issue were actually of a federally insured bank "is a matter of the evidence, not the indictment, and if [they] were not, then the issue is moot." *Id.* at 734. That is to say, as *Redcorn* makes clear, the government's ultimate inability to prove its case in the way set

---

[1](...continued)
Thus, Renta's testimony confirms the only forged check at issue in Count 8 is the SureWest check and that the UMB Bank teller's check was neither stolen from the mail nor forged. Thus, the government is simply incorrect in asserting the UMB Bank teller's check underlies the forgery charge in Count 8.

out in the indictment is a question of sufficiency of the evidence or constructive amendment, not of the facial validity of the indictment. *Id.* at 733-34.

In the end, there is simply no doubt the indictment at issue in this case (1) identified all the relevant checks with sufficient specificity so Powell could mount a future double jeopardy defense, should he need to do so; and (2) gave him fair notice of the charges he was expected to defend, i.e., the forged checks were "of" a federally insured bank operating in interstate commerce. Powell's challenge to the facial validity of the indictment is without merit.

## 2. Variance/Sufficiency of the Evidence[2]

### a. Error

#### i. Legal Background

The parties offer diametrically opposed readings of § 513(a). Relying on one of many alternative dictionary definitions, Powell asserts the term "of" necessarily connotes ownership. Further relying on cases setting out Colorado state law, Powell asserts only the payor and payee of a check have an ownership interest therein prior to negotiation. For its part, the government asserts the term "of" does not connote ownership but, instead, only a relevant connection to the forged check. The government further alleges that each of the circuits to have

[2]As both Powell and the government recognize, the validity of both his variance and sufficiency arguments is dependent on his assertion a check can only be "of" its payor and payee. Appellee Answer Br. at 11; Appellant Reply Br. at 3 n.2. We agree with the parties' assessments. Because the issues are analytically indistinct, this court treats them as such.

considered the question has concluded a forged check is "of" both the drawee bank and the depository bank. Having reviewed the relevant statutory language and decisions from other circuits, this court concludes the government and Powell are each half right: the government is correct in arguing a forged check is "of" the drawee bank; Powell is correct in arguing a forged check is not, during its possession or utterance, "of" the bank into which it is eventually deposited.

Each circuit that has considered the question whether a forged check can be simultaneously "of" the payor and "of" the drawee bank has answered the question in the affirmative. *United States v. Lee*, 439 F.3d 381, 385 (7th Cir. 2006); *United States v. Hanson*, 132 F. App'x 981, 982-83 (3d Cir. 2005) (unpublished); *United States v. Kellum*, 119 F. App'x 32, 34 (9th Cir. 2004) (unpublished); *United States v. Wade*, 266 F.3d 574, 581-82 (6th Cir. 2001); *United States v. Jackson*, 155 F.3d 942, 946 (8th Cir. 1998); *United States v. Chappell*, 6 F.3d 1095, 1099 (5th Cir. 1993). In this court's view, the uniform holdings in this regard are entirely consistent with the common usage of the term "of" as connoting a meaningful and relevant connection. Black's Law Dictionary 1080 (6th ed. 1990) (defining "of" to mean, inter alia, "[a]ssociated with or connected with"); Webster's Third New International Dictionary 1565 (1993) (defining "of" to mean, inter alia, "a function word to indicate the place or thing from which anything moves, comes, goes, or is directed or impelled"). While it is certainly true both of these dictionaries indicate, as noted by Powell, that "of" *can*

-10-

mean ownership, there is nothing to indicate the definition advanced by Powell is the preferred definition. Nor, more importantly, can Powell offer any basis for asserting a particular aspect of § 513(a) compels the restrictive interpretation he advances on appeal.[3] The analysis set out in the opinions cited above is far more convincing than the construction of the term "of" advanced by Powell. This court, therefore, joins the unanimous list of courts concluding the government can prove a forged check is "of" an organization affecting interstate commerce by presenting evidence the check is drawn on a federally insured bank. *Cf. Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1521 (10th Cir. 1991) ("Splitting the circuits always is something we approach with trepidation.").[4]

---

[3]Instead, interpreting "of" as the equivalent of ownership could do substantial damage to other portions of § 513(a). Although the instant case deals exclusively with "forged" securities, § 513(a) also criminalizes the making, uttering, or possession of "counterfeited" securities "of an organization" with intent to deceive a "person, organization, or government." The term counterfeited "means a document that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety." 18 U.S.C. § 513(c)(1); *cf. id.* § 513(c)(2) (defining forged to mean "a document that purports to be genuine but is not because it has been falsely altered, completed, signed, or endorsed, or contains a false addition thereto or insertion therein, or is a combination of parts of two or more genuine documents"). If "of" equates to ownership, the creation of a wholly false check purporting to be drawn on a real federally insured bank would not fall within the rubric of § 513(a). Courts have, however, uniformly concluded such conduct falls within the contours of § 513(a). *United States v. Brooks*, 394 F. App'x 953, 954-55 (3d Cir. 2010) (unpublished); *United States v. Robinson*, 318 F. App'x 280, 284 (5th Cir. 2009) (unpublished); *United States v. Dumonde*, 190 F. App'x 788, 791-92 (11th Cir. 2006) (unpublished); *United States v. Van Shutters*, 163 F.3d 331, 338-39 (6th Cir. 1998).

[4]Powell is incorrect in arguing the Fifth Circuit's decision in *United States*
(continued...)

-11-

Alternatively, this court has no difficulty concluding the checks at issue were not "of" the banks into which they were eventually deposited. In support of its argument to the contrary, the government simply asserts "Powell concedes [every court to consider his argument has rejected it], noting 'five circuit courts of appeal have held that a check subsequently forged can be "of" a drawee *or depository bank* for § 513(a) purposes.'" Appellee Answer Br. at 11 (quoting Appellant Opening Br. at 11). At oral argument, however, the government acknowledged no court has so held.[5] In fact, as far as this court can tell, no court has ever addressed whether a forged check can be "of" a depository bank. In resolving this question then, this court applies the definition of "of" set out above

[4](...continued)
*v. Reasor*, 418 F.3d 466 (5th Cir. 2005), supports his assertion "of" means ownership. *Reasor* dealt with a very narrow indictment alleging the defendant forged checks of a specific entity (a church). *Id.* at 469-70. On appeal, the defendant argued the church did not meet the definition of "organization" set out in § 513(c)(4). *Id.* at 470. The government did not attempt to defend the convictions on the basis the church qualified as an "organization" but, instead, argued the checks were "of" the drawee bank. *Id.* at 474. Given the narrowness of the indictment, the Fifth Circuit concluded the government's newly raised argument would work an independently reversible constructive amendment of the indictment. *Id.* at 474-77. In so ruling, the Fifth Circuit was careful to note its decision was fully consistent with *United States v. Chappell*, 6 F.3d 1095 (5th Cir. 1993), which had held, on the merits, that a forged check could be "of" the drawee bank. *Reasor*, 418 F.3d at 476-77. As set out above, the indictment in this case, like the indictment in *Chappell*, is relatively broad, allowing the government to prove its case by demonstrating the forged checks are "of" any federally insured bank operating in interstate commerce.

[5]Given the concession referenced in Powell's brief, it is difficult to blame the government for asserting five circuits have held a check can be "of" a depository bank. Powell's concession does not, however, make the assertion true.

and asks whether there is a relevant and meaningful connection between a forged check and the bank into which it is eventually deposited *during the time that check is possessed or uttered*. 18 U.S.C. § 513(a) (making it a criminal act to make, utter, or possess a forged check "of" an organization). There is simply no linguistic doubt the statute requires that the making, utterance, or possession of a forged check temporally coincide with that check's relationship to the relevant organization.

It is quite easy to see a meaningful contemporaneous connection between a forged check and the bank upon which it is drawn. For example, § 513(a) criminalizes possession of a forged check without regard to whether it is ever uttered. In that circumstance, possession of the forged check coincides at all points in time with its connection to the drawee bank. There are, however, a multitude of organizations to which such a check can thereafter be presented. It is impossible to assert such a check, before its deposit, is ever of a depository bank. To this, the government responds that each of the checks at issue here was eventually uttered and, once uttered, the necessary connection came into existence. The problem with this assertion is the government points to no authority supporting the proposition a depository bank's interest in a forged check coincides with the check's utterance, rather than following immediately after the utterance. Nor could this court find any such authority. Absent factual or legal support for the proposition a depository bank's interest in a forged check

-13-

coincides with its utterance, it is simply impossible to say Powell possessed or

uttered a check "of" a depository bank, even the bank into which it was

eventually deposited.[6]

## ii. Application

Having concluded a forged check is "of" a drawee bank but not "of" a

depository bank, this court concludes there was no error as to Counts 13 and 20.

As Powell concedes, Appellant Opening Br. at 16, the government presented

evidence at trial demonstrating Wells Fargo operates in interstate commerce.

Powell did not contest this issue at trial. The evidence unequivocally establishes

the checks underlying Counts 13 and 20 were drawn on Wells Fargo. The forged

checks underlying these counts were submitted to the jury as Government's

Exhibits 126 and 153. When coupled with the fact Powell does not challenge on

appeal any element of these counts other than the of-an-organization element, and

the conclusion the indictment properly stated that element broadly enough to

---

[6]The government's reading of § 513(a) would inject an unwarranted
linguistic anomaly into the statute. Section 513(a) criminalizes, inter alia, the
utterance of a forged check "of an organization," "with intent to deceive another
person, organization, or government." Under the government's reading of
§ 513(a), a depository bank could fill both sides of the statute's equation. That is,
a check drawn on a stranger bank (i.e., not the depository bank) could be both
"of" the depository bank and uttered with intent to deceive that same depository
bank (or its representatives). In our view, such an interpretation stretches
§ 513(a) well past the boundaries of plain meaning.

include proof the forged checks were "of" any federally insured bank,[7] Powell's variance and sufficiency-of-the-evidence challenges to Counts 13 and 20 necessarily fail. That being the case the remainder of this court's plain-error analysis does not apply to Counts 13 and 20.

This court reaches a contrary conclusion as to the remaining counts. As to Counts 6, 8,[8] 15, 17, 22, 24, 26, and 28, there is absolutely no evidence in the record that any of the forged checks' payors, payees, or drawee banks are organizations operating in interstate commerce. Thus, there is no evidence in the record to support § 513(a)'s of-an-organization element as to any of these counts.

Count 10 presents a closer question. That count is one of only two counts supported by more than one check. The first check supporting Count 10 is drawn on Wells Fargo. This check was submitted to the jury as Government's Exhibit 106. If it were standing alone, this court would have no difficulty concluding Count 10 was supported by sufficient evidence and was consistent with the broad indictment. The second check underlying Count 10, however, is a United States Treasury check made out to an individual as payee.[9] This check was submitted to

---

[7]*See supra* n.4.

[8]*See supra* n.1.

[9]Powell seems to think this check would ordinarily fit within the terms of § 513(a) had the government not limited the indictment to organizations, because it is a check of a "government." Appellant Opening Br. at 18. This is incorrect. While it is certainly true that the United States can prove the intent-to-deceive

(continued...)

-15-

the jury as Government's Exhibit 108. Because the record does not definitively reveal that the jury relied exclusively on the check set out in Government's Exhibit 106 in finding Powell guilty of Count 10, this court concludes Powell's conviction on that count amounts to error.

This court's conclusion that Powell's conviction on Count 10 amounts to error is supported by the Supreme Court's decision in *Griffin v. United States*, 502 U.S. 46, 59 (1991). In *Griffin*, the Court confronted the question whether, "in a federal prosecution, a general guilty verdict on a multiple-object conspiracy charge must be set aside if the evidence is inadequate to support conviction as to one of the objects." *Id.* at 47. In answering that question in the negative, the Court distinguished between situations where one theory underlying a multi-theory count of conviction is factually insufficient and situations where one theory underlying a multi-theory count of conviction is plagued by legal error:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of

---

[9](...continued)
element of § 513(a) by proving an intent to deceive a "government," the only securities at issue in § 513(a) are securities of an "organization" or "a State or a political subdivision thereof." 18 U.S.C. § 513(a), (c)(5). Criminal acts relating to counterfeited or forged securities of the United States are set out at 18 U.S.C. §§ 470 to 477.

> relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence . . . .

*Id.* at 59. In the case at hand, the jury was presented with two avenues for convicting on Count 10: (1) one entirely proper avenue supported by sufficient evidence (i.e., Government's Exhibit 106); and (2) one avenue that "fails to come within the statutory definition of the crime"[10] (i.e., Government's Exhibit 108). This is exactly the situation described as error in the passage from *Griffin* quoted above.

### b. Plainness

This court has made clear that a conviction in the absence of sufficient evidence constitutes error that is plain. *Goode*, 483 F.3d at 681. As the government notes, however, there is a complication in this case: any determination that the evidence in this case is insufficient turns entirely on a novel question of statutory interpretation. This court need not decide whether the plainness of a sufficiency-of-the-evidence error depends on the context in which that error arises; the error here is plain even if we focus our analysis solely on the interpretation of § 513(a).

Normally, the plain error standard cannot be satisfied unless the claimed error is contrary to well-settled law, "that is, to the current law of the Supreme Court or the Tenth Circuit." *United States v. Wardell*, 591 F.3d 1279, 1298 (10th

---

[10]*Griffin v. United States*, 502 U.S. 46, 59 (1991).

Cir. 2009).  The absence of such precedent will not, however, prevent the conclusion an error is plain when statutory language is clear and obvious.  *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003).  For those reasons set out above, this court concludes the plain language of § 513(a) makes clear a forged check is not "of" a depository bank during its possession or utterance.  That being the case, the lack of evidence supporting all convictions (but Counts 13 and 20) is plain.  Likewise, given *Griffin* was decided thirty-three years ago, the error as to Count 10 identified above is likewise plain.

### c. Substantial Rights

This court's decision in *Goode* makes clear the lack of sufficient evidence "clearly prejudice[s] the defendant."  483 F.3d at 681-82 & 681 n.1.  Thus, Powell has established the error recognized above affects his substantial rights as to Counts 6, 8, 15, 17, 22, 24, 26, and 28.  It is likewise clear, at least under binding Tenth Circuit precedent, that the error associated with Count 10 affects Powell's substantial rights.  *Compare United States v. McKye*, 734 F.3d 1104, 1110 n.6 (10th Cir. 2013) (applying the *Griffin* line of cases and holding that "when there is legal error as to one basis for finding an element, the submission of an alternative theory for making that finding cannot sustain the verdict unless it is possible to determine the verdict rested on the valid ground" (quotation omitted)), *with id.* at 1111-14 (Briscoe, C.J., concurring) (expressing doubt as to

-18-

the validity of the prejudice analysis set out in the majority opinion, but agreeing panel was bound by Tenth Circuit precedent to apply that analysis).

### d. Miscarriage of Justice

Under the fourth prong of plain-error review, a court may exercise its discretion to notice a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 736 (10th Cir. 2005) (en banc). Under that standard, an appellant must demonstrate failure to notice the error would result in a "miscarriage of justice." *Id.*; *Goode*, 483 F.3d at 682. Powell has undoubtedly satisfied his burden as to Counts 6, 8, 15, 17, 22, 24, 26, and 28. As to each of these counts, there is absolutely no evidence in the record that any of the forged checks' payors, payees, or drawee banks is an organization operating in interstate commerce.

Powell has failed, however, to demonstrate the failure to set aside his conviction on Count 10 would amount to a miscarriage of justice. As noted above, Powell's conviction on Count 10 is fully and overwhelmingly supported by Government's Exhibit 106. This court has previously concluded a remarkably similar situation was not sufficient to grant relief under the fourth prong of plain error review. *Goode*, 483 F.3d 682. In *Goode*, the defendant was indicted on one count of being a felon unlawfully in possession of a firearm. *Id.* at 678. At trial, the government presented uncontradicted testimony the firearm traveled in foreign

-19-

commerce. *Id.* at 678-79. In its elemental jury instruction, however, the district court instructed the jury that to convict it must find the firearm traveled in interstate commerce. *Id.* On appeal, Goode raised an unpreserved claim of insufficient evidence. *Id.* at 680-81. This court denied relief, concluding as follows:

> [W]e deny relief because this is one of those rare cases in which the defendant's insufficient-evidence claim fails on the fourth element. . . . There was no miscarriage of justice. Mr. Goode seeks to set aside his conviction on the ground that the government failed to prove that his firearm had traveled in interstate commerce. Yet it is a certainty that the firearm had traveled in foreign commerce, so that Mr. Goode's possession was "in or affecting commerce," as charged in the indictment. *See United States v. Wallace*, 889 F.2d 580, 583 (5th Cir. 1989) ("[S]ection 922(g) reaches . . . those firearms that traveled in interstate or foreign commerce."). The alleged insufficiency of the evidence could have been quickly cured by amending the instruction if Mr. Goode had challenged at trial the insufficiency he raises on appeal.

*Id.* at 682 (quotations omitted). Furthermore, given his uncompromising insistence on appeal that a forged check can only be "of" its payor and payee for purposes of § 513(a), Powell does not even address how this court should treat Count 10 if we reject his all-or-nothing approach to the statute. Thus, he has given this court no reason to assume the jury did not base its guilty verdict on Count 10, at least in part, on the evidence associated with Government's Exhibit 106. In particular, Powell has not identified anything particular about his defense of Count 10 that makes it possible, let alone likely, the jury had any reason to doubt the government's proof as to Exhibit 106. After all, the jury convicted

Powell on each and every count set out in the indictment, rejecting his theory at trial that he was unaware the checks were stolen or forged. With this in mind, it is worth restating that the burden is on Powell to demonstrate a manifest injustice. *Gonzalez-Huerta*, 403 F.3d at 736. This court will not manufacture such arguments on Powell's behalf. *McKissick v. Yuen*, 618 F.3d 1177, 1189-90 (10th Cir. 2010).

### III.  CONCLUSION

This court **AFFIRMS** Powell's convictions as to Counts 10, 13, and 20. We **REMAND** so the district court can vacate the remaining convictions and take any other necessary action consistent with this opinion.