# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30364

United States Court of Appeals
Fifth Circuit

**FILED**

March 5, 2014

Lyle W. Cayce
Clerk

CITY OF ALEXANDRIA,

Plaintiff – Third Party Plaintiff – Appellee

v.

CLECO CORPORATION; ET AL,

Defendants

JOHN M. SHARP,

Third Party Defendant – Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:05-CV-1121

Before KING, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM*:

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30364

Attorney John M. Sharp appeals the denial of his Rule 54 motion for attorneys' fees as part of a long-running dispute over legal fees with the City of Alexandria, Louisiana. For the following reasons, we AFFIRM the district court.

**FACTS AND PROCEEDINGS**

By now both the litigants and this court are well aware of the long history of the City of Alexandria's litigation with the Cleco Corporation, as well as the subsequent attorneys' fees dispute between the City and its former contingency counsel. *See, e.g.*, *City of Alexandria v. Brown*, 740 F.3d 339 (5th Cir. 2014) ("*City of Alexandria I*"). As such, we restrict ourselves to the core facts bearing upon John Sharp's ("Sharp") present appeal.

In 2004 the City of Alexandria hired a legal team to pursue the City's legal claims against the Cleco Corporation for electricity overcharges. The City hired Sharp, a successful Louisiana energy lawyer, along with H. Craig Davidson, a former associate of Sharp's who had just started his own firm, to be the legal team's energy law experts.

Though Sharp and Davidson worked for separate firms, the City hired Sharp and Davidson in a single contract (the "Sharp/Davidson contract"). And while the contract was concluded in haste, it is undisputed that the contract refers to Sharp and Davidson collectively as "Attorney," awards Sharp and Davidson a 20% contingency, and was authorized by the City Council in July 2005. The contract indicates that Sharp and Davidson "will take the lead role and control all proceedings relating to the Claims." The Sharp/Davidson contract also contains an attorneys' fees provision indicating that "Client further covenants and agrees to pay any and all attorney fees and costs Attorney incurs as a result of any lawsuit or action brought to

2

recover any fees, costs, expenses, or reimbursement due Attorney under this Agreement or arising as a result of any breach of this Agreement."

The City filed suit against Cleco in Louisiana state court in June 2005, and Cleco then removed the case to federal court. The case moved forward in fits and starts until February 2007, when KMPG, the impartial court-appointed auditor, released a report calculating the financial impact of Cleco's overcharges to the City. The KMPG draft report kickstarted mediation discussions, some of which were handled by Sharp and Davidson, some of which were handled by the City. After a little over a year of mediation talks, the City and Cleco signed a Memorandum of Understanding ("MOU") in May 2008, and began the process of translating the MOU into a workable settlement agreement. Sharp, along with John Adranga (a Washington, D.C.-based energy law specialist), took the lead in preparing the Power Supply Agreement.

However, as those negotiations were ongoing, Davidson discovered in August 2008 that the Louisiana Bar Disciplinary Counsel had recommended Sharp's disbarment for settling a personal injury case off-the-books, and then keeping the proceeds of the settlement from his partners until he was caught. Davidson—and not Sharp—called City Attorney Johnson and informed him of the development. Shortly thereafter, the City faxed Sharp a termination letter.

After Sharp was terminated in August 2008, the City and Cleco struggled, for a variety of reasons, to translate the MOU into a settlement agreement. The Cleco litigation continued and did not ultimately settle until the eve of trial in February 2010. The settlement agreement had a value of approximately $50.7 million for the City.

No. 13-30364

Once the primary litigation settled, Sharp claimed (along with the other contingency attorneys) that the City owed him his full contingency fee. Rather than pay that fee, the City filed a third party complaint and request for a declaratory judgment against Sharp and Davidson. The City's declaratory judgment action claimed that the Sharp/Davidson contingency contract was void and/or unenforceable, and that Davidson and Sharp could recover only on the basis of *quantum meruit* and not the contracted-for contingency fee. In response to the City's complaint, Davidson counterclaimed for his fee, and Sharp filed a third-party complaint.

After discovery, the court held a six-day bench trial on Sharp's, Brown's, and Davidson's claims for fees. In its post-trial order, the Court awarded Brown $0, Sharp $700,000, and Davidson $1,300,000. To arrive at the $700,000 figure, the district court eschewed enforcing the contingency contract, and instead calculated Sharp's award on the basis of *quantum meruit*. The court justified its choice of *quantum meruit* analysis by explaining that Sharp's

> own misconduct and disbarment also acted as an impediment to his completion of the case and required the city to retain new counsel, rework the entire case strategy and progress, and incur very substantial attorney's fees with replacement counsel. In our view the only way to compare apples to apples here is to consider all the factors in making a *quantum meruit* calculation.

In then calculating the *quantum meruit* award due Sharp, the court noted the maximum value of Sharp's contingency contract ($5.07 million), the amount of Sharp's proposed lodestar calculation ($1,124,700), and the amount that the City paid Sharp's replacement to litigate the case to settlement ($1,522,691.15). The court then considered those amounts in light of "all the factors" relating to the value of Sharp's representation, including

4

the factors set out in Louisiana Rule of Professional Conduct Rule 1.5(a).  As a positive factor supporting a higher monetary award, the court highlighted that Sharp's representation "did have value" for the City because Sharp succeeded in "getting the case to a point, even though not a final point" for the City.  But the Court also noted that multiple points in the record (Sharp's disbarment, "attitude," and "lack of deference to the City's strategy") supported a lower award.  The court found Sharp's behavior during the settlement talks, wherein he "began to think he was in charge of whether the City would settle or not," to "have been a particularly negative factor" in determining the amount owed.  The court then balanced the positive and negative factors and decided that the City owed Sharp $700,000.

Sharp, Brown, and Davidson all filed notices of appeal of the district court's decision.  The City cross-appealed as to Sharp and Davidson.  Before Sharp filed a brief, however, Sharp and the City filed a joint motion to dismiss Sharp's appeal and the City's cross-appeal as to Sharp with prejudice.  The motion noted that:

> Following dismissal of their respective pending appeals of the July 19, 2012 judgment, Sharp and the City shall resume litigation  of the Rule 54 motion—and defenses thereto—before the District Court.  Accordingly, pursuant to the parties' agreement, Sharp shall retain all rights and claims for attorney's fees addressed by the pending Rule 54 motion before the District Court, and the City shall retain all defenses thereto.  The pending Rule 54 motion shall be separately litigated to final judgment, including by separate and distinct appeal, if filed by either party.

This court granted the unopposed motion to dismiss the appeal.  After Sharp's appeal was dismissed, the parties returned to district court and

litigated Sharp's Rule 54 motion.  The district court denied Sharp's request for fees.

In the beginning of its oral order on the Rule 54 motion, the court explained that its previous order awarding attorneys' fees had left the exact status of Sharp's claim for his attorneys' fees up in the air.  To clarify matters, the court indicated that it had meant to "reject[] the counterclaim's demand for additional attorney's fees for the collection suit," but also added "I didn't say that."  The court went on to note that even if the previous ruling did not preclude Sharp from advancing his claims, Sharp still lost on the merits for two reasons.

First, the court noted that "the contract was terminated for cause," at which point "the contract is gone, period."  Once Sharp was disbarred, the court explained, "he was prohibited from going forward under the contract." Accordingly, there was a "failure of consideration or cause for the continuation of the contract," and Sharp "no longer . . . had any contract rights" and could only "recover in *quantum meruit.*"

Next, the court explained that the contract's severability clause[1] could not otherwise save Sharp's claim for attorneys' fees. Because Sharp had been terminated for cause, the court indicated, "the entire contract was terminated" and could not be revived via the severability clause.  "[N]othing in this contract allows it to survive," the court noted, "when the attorney is

---

[1] The severability clause provides that "[s]hould any term, provision, or part of this Agreement be found to be unenforceable or contrary to law, then the remainder shall be given full force and effect without the offending portions, or with such offending portions rewritten so as to give full effect to the parties' intent and cause for entering into the agreement."

disbarred for misconduct." The court accordingly denied Sharp's Rule 54 motion. Sharp timely appealed.

While Sharp's appeal was pending, another panel of this court issued the *City of Alexandria I* opinion, which resolved Brown's and Davidson's appeals of their fee awards, as well as the City's cross-appeal as to Davidson's fee award. In relevant part, the opinion held that Davidson—the other lawyer retained by the Sharp/Davidson contract—could neither collect his contracted-for contingency fee nor recover his attorneys' fees for suit because Sharp's disbarment meant that Sharp and Davidson did not perform the joint, indivisible obligation set out by the Sharp/Davidson contract. *City of Alexandria I*, 740 F.3d at 354-58.

## STANDARD OF REVIEW

A district court's determination of attorneys' fees is reviewed for an abuse of discretion. Findings of fact supporting the award are reviewed for clear error, and legal conclusions are reviewed de novo. *Dean v. Riser*, 240 F.3d 505, 507 (5th Cir. 2001).

## DISCUSSION

Under this circuit's rule of orderliness, "only an intervening change in the law (such as by a Supreme Court case) permits a subsequent panel to decline to follow a prior Fifth Circuit precedent." *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013). We believe that *City of Alexandria I* is dispositive of the questions presented by this appeal. Given that Sharp is trying to collect on the exact same contract, and it was Sharp, and not Davidson, that was actually disbarred, we are compelled to conclude that

No. 13-30364

Sharp cannot enforce the contract to collect attorneys' fees for the costs of bringing his collection suit because he did not perform under the contract. Though Sharp submits that he "respectfully disagrees with the Court's conclusion [in *City of Alexandria I*], regarding the enforceability of Mr. Davidson's attorney's fee clause," disagreeing with a prior panel opinion is not one of the exceptions to the rule of orderliness. As such, we affirm the district court's denial of Sharp's Rule 54 motion.

## CONCLUSION

We AFFIRM the district court.