# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 21, 2025

Lyle W. Cayce
Clerk

No. 24-60531

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ERNEST QUINTEZ CLARK,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:24-CR-49-1

_____

Before KING, SMITH, and DOUGLAS, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

While on probation for Louisiana felony aggravated assault with a firearm, Ernest Clark was found in possession of a firearm. He pleaded guilty of possessing a firearm as a felon under 18 U.S.C. § 922(g)(1). On appeal, he contends that disarming him for life violates the Second Amendment. Because disarming violent felons and those in possession of a firearm while on probation accords with the nation's history and tradition of firearm regulation, we affirm.

No. 24-60531

## I.

Clark was on probation for Louisiana aggravated assault with a firearm when he was found in possession of a firearm. A grand jury indicted him on one count of possessing a firearm as a felon under § 922(g)(1). He moved to dismiss the indictment, maintaining that (A) § 922(g)(1) was unconstitutional as applied to him under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022); (B) § 922(g)(1) violates the equal protection guarantee of the Fifth Amendment; and (C) § 922(g)(1) violates the Commerce Clause. The district court denied his motion.

Clark pleaded guilty per a plea agreement. He waived "the right to appeal the conviction and sentence imposed . . . on any ground whatsoever, with the exception . . . [of] the right to pursue a direct appeal of the District Court's order regarding the Defendant's motion to dismiss pursuant to [*Bruen*]." At the plea hearing, he acknowledged that he understood and agreed to the waiver. The district court sentenced him to 64 months' imprisonment and three years of supervised release.

## II.

Though Clark raises five claims on appeal, he acknowledges that three of them are foreclosed or waived by his appeal waiver.[1] We address (A) his as-applied challenge under *Bruen* and then (B) his Fifth Amendment equal protection challenge.

---

[1] Clark acknowledges that his § 922(g)(1) challenge under the Commerce Clause is foreclosed, s*ee United States v. Alcantar*, 733 F.3d 143, 145–46 (5th Cir. 2013), as is his facial challenge to § 922(g)(1) under *Bruen*, *see United States v. Diaz*, 116 F.4th 458, 470 n.4, 471–72 (5th Cir. 2024), *cert. denied*, 2025 U.S. LEXIS 2453 (U.S. June 23, 2025), and that his appeal waiver "bars his challenge to the district court's application of the sentencing guidelines."

No. 24-60531

A.

Section 922(g)(1) makes it unlawful for an individual to possess a firearm if he "has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." Clark contends that, as applied to him, § 922(g)(1) violates the Second Amendment.[2]

The Second Amendment guarantees that "the right of the people to keep and bear Arms[ ] shall not be infringed." U.S. CONST. amend. II. That right, however, "is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Instead, "history and tradition support Congress's power to strip certain groups of that right." *Diaz*, 116 F.4th at 466.

The Supreme Court has instructed courts "to employ a two-step framework to analyze whether a particular firearm regulation violates an individual's right to keep and bear arms." *United States v. Kimble*, 142 F.4th 308, 310 (5th Cir. 2025) (citing *Diaz*, 116 F.4th at 463). First, a court must determine whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24. Second, if the actions are covered by the text, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* Thus "[t]he question [Clark's] as-applied challenge raises is whether 'the government [can] demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to' [his]." *Kimble*, 142 F.4th at 311 (quoting *Diaz*, 116 F.4th at 467).

In applying that framework, "[o]ur caselaw recognizes three categories of offenses that doom a defendant's as-applied challenge to [§ 922](g)(1):

---

[2] Though Clark's motion to dismiss styled his argument as an as-applied challenge, he raised what is in essence a facial challenge to § 922(g)(1). And though we review unpreserved challenges for plain error, his challenge fails even under *de novo* review. *Cf. United States v. Keiffer*, 991 F.3d 630, 635, 635 n.4 (5th Cir. 2021) (applying that approach).

3

theft, violence, and violating the terms of one's release by possessing arms while on parole." *Id.* As our recent precedents confirm, Clark's as-applied challenge is doomed because his predicate felony—aggravated assault with a firearm—was violent, and because he possessed a firearm while on probation.

1.

Clark contends that lifetime disarmament based on his conviction of aggravated assault with a firearm is not consistent with the nation's historical tradition of firearm regulation. Three of our recent precedents—*United States v. Bullock*, 123 F.4th 183 (5th Cir. 2024), *petition for cert. filed* (U.S. July 28, 2025) (No. 25-5208); *United States v. Isaac,* No. 24-50112, 2024 WL 4835243 (5th Cir. Nov. 20, 2024) (per curiam) (unpublished); and *United States v. Schnur*, 132 F.4th 863 (5th Cir. 2025)—demonstrate why Clark's theory fails.

First, in *Bullock*, this court held that Bullock could be constitutionally dispossessed of a firearm under § 922(g)(1) because of his history of "dangerous and violent crimes." 123 F.4th at 185. Bullock had been convicted of manslaughter and aggravated assault with a firearm and "previously misused a firearm to harm others when he shot one individual, fired into a crowd of others, and in the process killed an innocent passerby." *Id.* We reasoned that "[f]rom the earliest days of the common law, firearm regulations have included provisions barring people from misusing weapons to harm or menace others." *Id.* (quoting *United States v. Rahimi*, 602 U.S. 680, 693 (2024)). We thus concluded that "[t]here can be no doubt that manslaughter and aggravated assault . . . constitute dangerous and violent crimes." *Id.*

Second, in *Isaac*, our court "denied an as-applied challenge brought by a defendant [ ] whose predicate offense was aggravated assault with a deadly weapon." 2024 WL 4835243, at *1. Echoing *Rahimi*, we noted that because Isaac had "previously misused a firearm in an attempt to harm

another," "[a] ban on his ability to possess a firearm . . . fits neatly within our Nation's historical tradition of firearm regulation." *Id.*

And finally, in *Schnur*, we held that a defendant convicted of aggravated battery could be constitutionally disarmed under § 922(g)(1). 132 F.4th at 866. We reasoned that "Schnur's felony conviction for a 'crime of violence' indicates that he poses a threat to public safety and the orderly functioning of society" and therefore, his disarmament "is 'consistent with this Nation's historical tradition of firearm regulation.'" *Id.* at 870 (quoting *Bruen*, 597 U.S. at 33–34).

Those cases make clear that "there are historical analogues demonstrating our longstanding tradition of disarming persons with a violent criminal history" like Clark's. *See id.* at 869 (citing *Bullock*, 123 F.4th at 185). Like Isaac, Clark was convicted of aggravated assault with a firearm—clearly a dangerous and violent crime.

Distinguishing *Bullock*, Clark says that there, "the record included facts about the defendant's prior convictions that allowed the Court to conclude that [Bullock] had threatened or committed violence with a firearm," while here the record contains little information about his underlying conviction. He avers that "the most this Court can conclude is that he committed the minimum conduct necessary to support that conviction—negligent discharge of a firearm." But even negligent aggravated assault with a firearm would come under the tradition of disarming those convicted of "'menac[ing] others with [a] firearm[]' and 'disrupt[ing] the public order' through conduct likely to lead to 'actual violence.'" *See United States v. Morgan*, --- F.4th ---, ---, No. 24-30561, 2025 WL 2233205 at *5 (5th Cir. Aug. 6, 2025) (quoting *Diaz*, 116 F.4th at 464, 470–71).

In addition, as the panel in *Schnur* explained, "[w]hile the predicate aggravated assault convictions in *Bullock* and *Isaac* involved the use of fire-

arms, . . . Schnur's aggravated battery offense did not." 132 F.4th at 870. Clark's offense involved the use of a firearm. If Schnur's violent conduct *without* a firearm is sufficient to uphold a § 922(g)(1) conviction, then Clark's violent conduct *with* a firearm, even if negligent, certainly is too.

## 2.

Clark can be constitutionally disarmed for the additional reason that because he possessed a gun while on probation. *See United States v. Contreras*, 125 F.4th 725, 729 (5th Cir. 2025) (holding that § 922(g)(1) is constitutional where the defendant possesses a firearm while on probation or supervised release).

Clark contends that because the government did not rely on his probation status at the district court, it cannot do so on appeal. But in *Bullock* we explained that "the Second Amendment analysis is a legal inquiry into the text and history related to the relevant regulation, [so] the government may provide additional legal support for its arguments on appeal." 123 F.4th at 185. Moreover, we have considered more than the government's proffered predicate felony where analyzing a defendant's as-applied challenge to his § 922(g)(1) conviction.[3] Because "the government doesn't need to prove the specific predicate felony in securing a conviction under § 922(g)(1) in the first place," it makes little sense that the government would be limited to a specific predicate felony on appeal. *See United States v. Williams*, 113 F.4th 637, 660 (6th Cir. 2024) (Thapar, J.) (citing *Old Chief v. United States*, 519 U.S. 172 (1997)).

---

[3] *See United States v. Collette*, No. 22-51062, 2024 WL 4457462, at *2 (5th Cir. Oct. 10, 2024) (unpublished) (considering defendant's "criminal history . . . consisting only of his prior convictions . . . punishable by more than one year of imprisonment"); *United States v. Davis*, No. 24-20258, 2025 WL 958265 (5th Cir. Mar. 31, 2025) (unpublished).

No. 24-60531

Clark also contends that the government is not offering a new legal theory on appeal but is instead presenting a new fact: that Clark was on probation at the time of his § 922(g)(1) offense. Clark, however, concedes that "the PSR noted that [he] was on probation at the time of the offense, and [he] did not object."[4] And we may look at the "record amassed by the district court and the parties." *United States v. Daniels*, 124 F.4th 967, 977 n.12 (5th Cir. 2025), *petition for cert. filed* (U.S. June 5, 2025) (No. 24-1248). That includes the PSR. *See, e.g.*, *United States v. Moore*, No. 24-30053, 2025 WL 711119, at *3 (5th Cir. Mar. 5, 2025) (unpublished), *petition for cert. filed* (U.S. July 8, 2025) (No. 25-5051). The government also asserted Clark's probation status in its response to Clark's motion to dismiss. Consistent with the PSR, Clark agreed that the government would have proven at trial that he was "sentenced to six years, with four years suspended and three years of post release supervision" for his aggravated assault with a firearm conviction, further supporting that he was on probation at the time of the offense.

## B.

Clark's Fifth Amendment equal protection challenge fares no better. He has waived that issue.[5]

"An appeal waiver bars an appeal if the waiver (1) was knowing and voluntary and (2) applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Higgins*, 739 F.3d 733, 736 (5th

---

[4] Though Clark states that he did not object because he did not have reason to, he does not explain how his failure to object demonstrates that the government is introducing a new fact on appeal.

[5] Even if Clark had not waived his challenge, it is foreclosed. *See United States v. Goody*, 143 F.4th 617, 619 (5th Cir. 2025) (per curiam); *see also United States v. Darrington*, 351 F.3d 632, 634–35 (5th Cir. 2003) (rejecting Fifth Amendment equal protection challenge to § 922(g)(1)).

No. 24-60531

Cir. 2014).[6]

Clark suggests that he "preserved his right to pursue a direct appeal of the district court's order denying his motion to dismiss," including any issue that he raised in that motion, such as his Fifth Amendment claim. But Clark misrepresents his appeal waiver by omitting a necessary qualifier.

The appeal waiver states, in relevant part, that Clark waived "the right to appeal the conviction and sentence imposed in this case . . . on any ground whatsoever, with the exception . . . [of] the right to pursue a direct appeal of the District Court's order regarding the Defendant's motion to dismiss pursuant to . . . *Bruen*." In other words, Clark preserved a direct appeal to contest the dismissal of his as-applied *Bruen* challenge, but nothing more.[7] *Cf. United States v. Portillo-Munoz*, 643 F.3d 437, 442 (5th Cir. 2011) (holding that a conditional plea that preserved the right to appeal the denial of motion to dismiss as to a Second Amendment challenge barred defendant's Fifth Amendment argument on appeal).

Disarming violent felons and those in possession of a firearm while on probation accords with the nation's history and tradition of firearm regulation. The judgment of conviction is AFFIRMED.

---

[6] Clark does not claim that his waiver was unknowing or involuntary.

[7] Clark, in his motion to dismiss, raised an as-applied challenge per *Bruen*, a Fifth Amendment equal protection challenge, and a Commerce Clause challenge to § 922(g)(1). But he did not make any argument connecting his Fifth Amendment challenge to *Bruen*.